# EXHIBIT C

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x

ALBERTO BAEZ, on behalf of himself,
FLSA Collective Plaintiffs and the
Class,

                    Plaintiff,

          -against-                    Case No.
                                       1:21-cv-09714

PIZZA ON STONE LLC d/b/a ADRIENNE'S
PIZZA BAR, PETER POULAKAKOS, FRANK
CASANO and NICK ANGELIS,

                    Defendants.


-------------------------------------x



                    July 25, 2024

                    9:51 a.m.




          Deposition of NICK ANGELIS, taken by

Plaintiff, held via Zoom before Lisa Hiesiger,

a Shorthand Reporter and Notary Public within

and for the State of New York.






Job No.: 9504

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 2

A P P E A R A N C E S :

    LEE LITIGATION GROUP, PLLC

    Attorneys for Plaintiff

        148 West 24th Street, 8th Floor

        New York, New York, 10011

 By:  C.K. LEE, ESQ.

        klee@leelitigation.com

    LAW OFFICES OF WAYNE KREGER, ESQ.

    Attorneys for Defendants

        424 Madison Avenue, Suite 300

        New York, New York 10017

 By:  WAYNE KREGER, ESQ.

Also Present:

    VANESSA BRUNJES, Law Clerk, Lee Litigation Group

           ~oOo~

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 3

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form of the question, shall be reserved to the time of the trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

THE COURT REPORTER:  The attorneys participating in this deposition acknowledge that I am not physically present in the deposition room and that I will be reporting this deposition remotely.

They further acknowledge that, in lieu of an oath administered in person, I will administer the oath remotely.

The parties and their counsel consent to this arrangement and waive any objections to this manner of reporting.

Please indicate your agreement by stating your name and your agreement on the record.

MR. LEE:  C.K. Lee, I agree.

MR. KREGER:  Wayne Kreger, I agree.

N I C K   A N G E L I S, having been first duly sworn by Lisa Hiesiger, a Notary Public, was called as a witness and testified as follows:

THE COURT REPORTER:  Mr. Kreger, will you be purchasing a copy of the transcript?

MR. KREGER:  Yes, of this one.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

EXAMINATION BY MR. LEE:

Q.   Good morning, Mr. Angelis, can you provide the spelling for your full legal name, sir?

A.   Sure, Nick, N-i-c-k, Angelis, A-n-g-e-l-i-s.

Q.   Is Nick your legal name or is it Nicholas?

A.   No, it's Nick.

Q.   Where do you currently reside, sir?

A.   My address is ███████████████

████████████████████████████████████

██████

Q.   I'm sorry, ████ what?

A.   ██████████

Q.   ███████████████████?

A.   Yes.

Q.   Is that a house, sir?

A.   Yes.

Q.   You don't have an apartment number, right?

A.   No.

Q.   Can you provide your mobile number, please?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

A.    ▮▮▮▮▮▮▮▮▮▮

Q.    Do you use e-mail, sir?

A.    Yes.

Q.    What is your work e-mail?

MR. KREGER:  Why do you need his e-mail address, C.K.?

MR. LEE:  In the event that I need to do discovery on it.

MR. KREGER:  Well, he's a client so you have to go through me, so I'm going to instruct him not to answer.

MR. LEE:  All right, well, I guess I'll note it for a ruling.

MR. KREGER:  I'm sorry?

MR. LEE:  I'm going to mark it for a ruling.

MR. KREGER:  Okay.

Q.    Do you currently -- where do you currently work, sir?

A.    I'm mostly retired.

Q.    Do you have equity interest in the entity called Pizza On Stone LLC?

A.    No.

Q.    Are you currently working there?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

A.    No.

Q.    Did you used to work there?

A.    Yes.

Q.    When did you work there, sir?

A.    From the time we opened, which is I don't remember if it's 2003 or '4 or it could be '5, until mid-2020.

Q.    Mid-2020?

A.    Yes.

Q.    Was the restaurant open during COVID?

A.    I believe we closed for six or eight weeks.

Q.    Starting in February 2020?

A.    I don't recall.

Q.    COVID happened in around February/March 2020 and that's when the shutdown was initially, is that the shutdown you were talking about?

A.    I don't remember exactly.

Q.    So when you were working there, what was your job title, sir?

A.    Well, I guess --

MR. KREGER:  Objection to form.

Go ahead.  Go ahead, Nick.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 8

Angelis

A.   Oh, I suppose I was the manager.

Q.   When you say manager, were you the general manager or a floor manager or is there a more specific title?

A.   I didn't have a specific title, just ran the place.

Q.   Was there another manager above you or no?

A.   Above me, no.  I'm sorry, it was a while ago, sometimes there was other people that managed also, not always.

Q.   I'm sorry, some other --

A.   Sometimes there was other people involved in the management.

Q.   Okay.  And who were they, sir?

A.   One of them was a Jason, Jason, that's all I remember, Jason.  Who else was there, I'm sorry, I don't remember.

Q.   What were your job duties there, sir?

MR. KREGER:  Object to form.

MR. LEE:  I'm sorry, Wayne.

MR. KREGER:  I said object to form.

It's a 16-year period he's talking about.

It could have changed, so it's incomplete

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 9

Angelis

as to time.

But if you understand, Nick, you can answer.

A.   I just made sure the place ran smoothly, kind of oversaw most of the operation in terms of the kitchen, the floor.

Q.   Did you work full time, sir --

A.   Yes.

Q.   -- when you were working at Pizza On Stone?

A.   Yes.

Q.   What were your hours usually?

MR. KREGER:   Object to form.

A.   Same thing, it varied depending on what needed to be done.

Q.   Were there typical hours that you worked, either from noon to 9 or something like that?

A.   No, not necessarily, just varied a lot, depending on what was going on in the pizza station or the kitchen or the floor.

Q.   Do you know a Frank Casano?

A.   Yes.

Q.   Who is Frank Casano?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

                    Angelis

A.   I believe he's one of the owners.

Q.   Did he also work in the restaurant with you?

A.   No.

Q.   Did he ever work in the restaurant?

A.   No.

Q.   Did he visit the restaurant?

A.   Yes.

Q.   Do you know what ownership stake Mr. Casano has?

A.   No.

Q.   Are there other owners in Pizza On Stone LLC?

A.   I believe so.

Q.   Do you know what are the names?

A.   The only other one I know is Peter.

Q.   Peter Poulakakos?

A.   Correct.

     MR. LEE:  For the reporter, that's P-o-u-l-a-k-a-k-o-s.

Q.   Do you know the ownership stake for Peter in Pizza On Stone?

A.   No.

Q.   Is there an HR person at Pizza On

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

Stone that does compliance?

MR. KREGER:  I'm sorry, the last word was what?

MR. LEE:  Does compliance.

A.   Yes, different people over different times.

Q.   Let's say at the time that you left, do you know who it was?

A.   I believe we had someone from the payroll company also, either Doris or Anisha, I'm not quite sure.

Q.   You're saying the HR compliance officer is somebody from your payroll company?

MR. KREGER:  Object to form.

A.   Again it's a while ago, I'm not sure. I know we did a lot of remote stuff through the payroll company.

Q.   Who was the payroll company?

A.   I believe it was Paycom.

Q.   P-a-y-c-o-m?

A.   Yes.

Q.   So you're not able to tell me who the name of the payroll person was when you left, correct?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 12

Angelis

MR. KREGER: Object to form.

A. No.

Q. Can you give me the name of any payroll compliance officer at Pizza On Stone during your employment there?

A. I'm not sure. I have a bunch of names, I'm not sure who would have been. I know again there was a Doris, an Anisha, an Earlton, different people over the time.

Q. Who is Doris?

A. One of the girls in the office.

Q. You're saying she was in charge of HR compliance?

MR. KREGER: Object to form.

A. No, again I'm not quite sure anymore who was.

Q. And Anisha would not have been in charge of HR compliance either, correct?

A. I don't recall specifically, no.

Q. So just to be clear, you actually just don't know who anybody was in charge of -- you're not sure whether anybody was in charge of HR compliance, correct?

MR. KREGER: Object to form.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

A.   I'm just not clear as to who had what position anymore.

Q.   So when an employee has questions about their pay or pay policies at Pizza On Stone, who would they go to?

MR. KREGER:  Object to form.

A.   Most of the time we directed them to go up to the third floor, which is where the offices were.

Q.   Who would they speak to at the office?

A.   Again, I'm not -- same thing, I don't recall.

MR. LEE:  Wayne, I just want to clarify, I believe Mr. Angelis is being produced as the corporate representative, right?

MR. KREGER:  The 30(b)(6), correct.

Q.   Did Francis Casano work in the third floor office?

A.   No.

Q.   Did Peter Poulakakos work in the third floor office?

A.   I don't think so.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 14

Angelis

Q.    Who worked in the third floor office?

A.    A lot of different people, I just, you know, the names I told you before, the people that I kind of remember up there.  Again it was a lot of years and a lot of different people.

MR. LEE:  Vanessa, can you pull up Plaintiff's Exhibit 7, which is the handbook.

Q.    Mr. Angelis, do you recognize this document, sir?

A.    Yeah, it looks like it was our employee handbook.

Q.    And do you see that it's dated for 2020, do you see that, sir?

A.    Yes.

Q.    This employee handbook contained the employment policies for employees working at Pizza On Stone?

A.    Yes, I believe so.

Q.    And I believe the policies applied uniformly to all the employees at Pizza On Stone?

A.    Yes.

Q.    Just to be clear, Pizza On Stone LLC is the corporate entity that's operating

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 15

Angelis

Adrienne's Pizza Bar, is that correct?

A.   Yes.

Q.   And Adrienne's Pizza Bar is located I believe at 54 Stone Street in New York City?

A.   Yes.

Q.   So when did you first become aware that Pizza On Stone was subject to a wage lawsuit?

A.   It would have been when Wayne told me he might need me to do this deposition.

Q.   Wayne, Wayne spoke to you directly?

A.   In an e-mail, yes.

Q.   Did you speak to Peter about the lawsuit?

A.   No.

Q.   You didn't speak to Peter about any of the claims that were in the lawsuit?

A.   No.

Q.   Did he reach out to you ever about this lawsuit?

A.   Peter?

Q.   Yes.

A.   No.

Q.   He didn't call you or text you to

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 16

Angelis

discuss the claims that were alleged?

A.    No, not to my recollection.

Q.    And just to clarify, you're saying you were running Adrienne's Pizza Bar when you were working there, right?

A.    Yes.

Q.    Could you hire and fire employees?

A.    Yes.

Q.    And you could set their pay?

A.    Yes.

Q.    And you could set their work schedule?

A.    No, usually -- I mean I could, but usually that was done by other guys in the kitchen or on the floor.  Different people.

Q.    But if you wanted to, you could adjust a person's schedule if they asked, right?

A.    Yes.

Q.    And you have access to all the employee documents for employees at Pizza On Stone?

A.    Did I have access, I mean they were mostly up in the offices.

Q.    If you wanted to see them, you could

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

see them, right?

A.   I guess if I had to.

Q.   And so what did Peter do at the restaurant?

A.   Nothing.

Q.   Did he work there ever?

A.   No.

Q.   Do you know what ownership percentage Peter has in Pizza On Stone?

MR. KREGER:  Object to form.

A.   No.

Q.   But you know he's an owner, right?

A.   Yes.

Q.   Are there any other owners in Pizza On Stone other than Peter and Frank?

A.   Not that I know of.

Q.   Did you have a replacement after you left?

A.   I don't know.

Q.   What were the circumstances of your leaving Pizza On Stone?

A.   I had been there a long time, I'm almost 64 now, and I guess I had had enough of the day-to-day.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 18

Angelis

Q.    I'm sorry, where are you located now, sir?

A.    Where do I live?

Q.    Yes, you live in Rockville Centre, New York, is that right?

A.    Yes.

Q.    You didn't like pack up to go to Florida, right?

A.    No.  We go back and forth sometimes.

Q.    Do you know what the claims are for -- do you know Alberto Baez, B-a-e-z?

A.    Yes.

Q.    So you know him personally and worked with him directly?

A.    Yes, I guess, I remember him.

Q.    And how about Noe Baez Reyes, N-o-e, B-a-e-z?

A.    I remember him as well, they were there a long time.

Q.    Ivan Velazquez?

A.    No.

Q.    You don't know Ivan?

A.    I don't remember him.

Q.    How about Jose Thomas?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 19

                          Angelis

          A.   No.

          Q.   And Ramon Mendoza?

          A.   No.

          Q.   I believe that employees when they
arrived at the premises, is there a punch clock
machine?

          A.   Yes.

          Q.   Do you know the vendor for the punch
clock machine?

          A.   I don't know.  I would guess it was
the Pay --

               MR. KREGER:  No guessing.

               THE WITNESS:  Sorry.

               MR. KREGER:  If you can remember.

               THE WITNESS:  No, I don't.

               MR. KREGER:  Tell him, but otherwise
     no guessing.

          A.   No, I don't remember.

          Q.   But you think it's possible that it
might have been Paycom?

          A.   Again I don't remember.

          Q.   What was the punch-in/punch-out
policy for employees at Pizza On Stone?

          A.   I don't understand the question.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 20

Angelis

Q. Could employees -- so for let's say Alberto Baez, do you know what his work schedule was?

A. No.

Q. What would be a typical work schedule for employees in the kitchen?

A. Some would work lunches, some would work dinners.

Q. So if somebody were working the lunch hours, what would the shift times be?

A. From what I remember, it would either be 10 or 11 o'clock to 4 or 5.

Q. And what if they worked the evenings?

A. Usually 4 or 5 until anywhere between 9 and 11.

Q. Mr. Baez alleges that he worked five days per week seven hours a day from Tuesday to Fridays. Would that appear accurate to you?

MR. KREGER: Object to form.

A. Again I don't remember what his schedule was.

Q. He also alleges that he worked 11 hours on Sunday. Would that be accurate?

MR. KREGER: Object to form.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

                        Angelis

A.   I don't remember.

Q.   If an employee was scheduled let's say from 10 to 4, if they arrive early and start working at 9:45, could they clock in at 9:45?

MR. KREGER:   Object to form.

A.   I'm sorry, one more time.

Q.   If an employee's work schedule was 10 to 4, 10 a.m. to 4 p.m. and they arrived early and start working at 9:45, which is 15 minutes before their scheduled work time, are they able to clock in?

MR. KREGER:   Object to form.

A.   Why wouldn't they clock in when they start working?

Q.   So you're saying it's okay for them to clock in before their scheduled work time, right?

A.   Maybe again, I'm not sure, maybe at one time it was.  I know sometimes they were able to limit that.  They have to wait until five minutes before, but I'm not sure, no, I'm not sure.

Q.   When you were working there and if somebody arrived early for their shift and

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 22

Angelis

clocked in 15 minutes before their scheduled work time, would you reprimand them?

MR. KREGER:  Object to form.

A.   I don't recall that, no.

Q.   Did you ever tell an employee that they couldn't clock in before their scheduled work time even though they were working?

A.   No.

Q.   Similarly if an employee worked past their scheduled shift time for let's say 20 minutes, would you ask them to clock out first?

MR. KREGER:  Object to form.

A.   No.

Q.   You wouldn't make sure that they were clocked in?

MR. KREGER:  Object to form.

A.   No one would clock out while they were working.

Q.   Is it the company's policy that employees could not clock in more than six minutes before their scheduled work time?

A.   No.

Q.   Is it the company's policy that employees couldn't stay clocked in more than six

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 23

Angelis

minutes past their scheduled work time?

A.   No.

Q.   Do you know what the claims are here for the claimants?

A.   Not exactly.

Q.   They're claiming that they were required to work off the clock.  Do you recall employees ever clocking out and continuing to work?

A.   No, no, that never happened.

Q.   Is it the company's policy that for employees to work overtime, they need to obtain prior approval from their supervisors?

MR. KREGER:  Object to form.

Q.   You can answer.

A.   No, no.  If I recall correctly, some people were scheduled with overtime.

Q.   Okay.

A.   Depending on whether we were busy or not busy.

Q.   You're saying certain people's schedules contemplated them working past 40 hours, correct?

A.   I believe so, yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

Q.   So let's say a person was scheduled for 42 hours a week, and that would be your position that the company does schedule ahead of time people to work overtime hours, correct?

A.   Yeah, I seem to remember that, yeah, some people had overtime.

Q.   But if such individual had to work past that contemplated 42-hour workweek because they had to do more work so that let's say they were working an extra three hours after a shift, would they be paid for it?

A.   Of course.

Q.   But isn't it the company's policy that employees needed to get prior approval if they were to work past their scheduled work hours?

MR. KREGER:  Object to form.

A.   No.

Q.   Isn't it the company's policy that employees had to get prior approval in order to work extra overtime hours?

MR. KREGER:  Object to form.

A.   No.

Q.   Did you ever read this employee

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

handbook yourself, sir?

A.    Yeah, I believe so.

Q.    Do you know who wrote it?

A.    No.

Q.    Was there a handbook prior to this version?

A.    I believe we've always had one.

Q.    Well, this one says 2020, is there an earlier one with an earlier date?

A.    I don't know.

Q.    Have you ever seen an earlier one with an earlier date?

A.    I've seen earlier ones, I just don't recall dates.  I know everyone got one when they were onboarded.

Q.    Even prior to 2020?

A.    I believe so.

MR. LEE:  Wayne, can you provide the earlier dated handbooks, please, sir?

MR. KREGER:  I don't know if there are any.  I don't know what we provided, but we can discuss that afterwards.

Q.    Do you know if there is a Spanish version of this handbook, sir?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 26

Angelis

A.   I believe so.

MR. LEE:  Wayne, can you provide that too?

MR. KREGER:  I don't know.

Q.   Have you seen the Spanish version, sir?

A.   Again I don't recall.

Q.   Do you speak Spanish, sir?

A.   No, not really.

Q.   You would agree that there are many employees at Adrienne's Pizza Bar that are native Spanish speakers, is that correct?

MR. KREGER:  I'm sorry, could you either read that back or repeat it, I didn't catch it.

Q.   Would you agree that there are many employees at Adrienne's Pizza Bar that are native Spanish speakers?

A.   Yes.

Q.   And would you agree that many of those individuals are not fluent English speakers?

A.   I can't say as to how many aren't or are over the years.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 27

Angelis

Q.   But you are aware that there are many employees over the years at Adrienne's Pizza Bar who are not native English speakers but are native Spanish speakers, correct?

A.   Again I can't say as to what many is, I'm not sure.

Q.   I'm not asking about how many years, I'm asking if you're aware that there are many Spanish speaking employees at Adrienne's Pizza Bar?

A.   Yes, that we said yes to.

Q.   Would you agree that Alberto Baez is a native Spanish speaker who is not fluent in English?

A.   I don't remember having trouble communicating with either of them.

Q.   When you say either of them, that would be Alberto Baez and Noe Reyes?

A.   Yes.

MR. KREGER:  Nick, try not to jump the gun on his question.  Let him finish his question and then give your answer.

THE WITNESS:  Okay.

Q.   Do you know if Noe Reyes was on the

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 28

Angelis

company's payroll or if he was paid cash?

A.   No, he was on the payroll.

Q.   Were there any other individuals who were not on the payroll that were working at Pizza On Stone?

MR. KREGER:  Object to form.

A.   I'm sorry, employees who weren't on the payroll, how do you mean?

Q.   That were paid cash?

A.   No.

Q.   They were all on payroll?

A.   Yes.

Q.   Could Peter hire or fire employees at Pizza On Stone?

A.   I never saw him hire or fire anyone.

Q.   But you're aware that he could if he wanted to, is that correct?

A.   I'm not sure.

Q.   Who hired you?

A.   I believe it would have been maybe Peter, Frank, I think the two of them together when we finally -- I think, now we're going back a long time.

Q.   And then the two of them determined

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 29

Angelis

your rate of pay?

A.   I guess, yes.

Q.   And the two of them worked out your working hours, that were the amount of time that you were committed to work at Pizza On Stone?

A.   Again it's a long time, I'm not sure.

Q.   Peter and Frank have access to employee records, correct, at Pizza On Stone?

A.   I don't know.

Q.   Well, they're the owners, right, so the owners should have access to employee records, right?

MR. KREGER:  Object to form.

A.   Yeah, I guess, I'm not sure.

Q.   Is there any reason for you to believe that they would not have access to employee records?

A.   No.

Q.   And Peter and Frank -- I'm sorry, let me backtrack.  Do you have assistant managers or other floor managers at Pizza On Stone?

A.   Different people at different times, yes.

Q.   Was there like a person in charge of

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 30

Angelis

the kitchen or were you in charge of the kitchen?

A.    Ultimately I was, and I had, yeah, ultimately me, yes.

Q.    Was there another person below you who was helping supervise the kitchen?

A.    There was a chef and a sous chef.

Q.    Do you know the name of the chef?

A.    The chef for a long time was Francisco, I believe.

Q.    Do you know his last name?

A.    No, I don't recall.

Q.    Did you hire Francisco?

A.    I believe so, yes.

Q.    When you hired him, did Peter or Frank approve the hire?

A.    Yes.

Q.    Did Peter and Frank approve the rate of pay for Francisco?

A.    Yes.

Q.    Did Peter and Frank work out that Francisco would be working full time?

A.    He was hired full time, yes.

Q.    Peter and Frank had worked that out with Francisco, right, that he would be a

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 31

Angelis

full-time --

A.   No, that would have been me.

Q.   When an employee has a question about their wage records, did they come speak to you or did they come speak to somebody else?

MR. KREGER:  Object to form.

Q.   You can answer, sir.

A.   I'm trying to recall, yes, they could speak to me.

Q.   Would you be the person responsible for answering employees' questions about wage policies at Adrienne's Pizza Bar?

MR. KREGER:  Object to form.

A.   How do you mean exactly?

Q.   Let's say I was a server and I wanted to ask you, I had questions about what a tip credit was, would I come to you to ask you, can you tell me what the tip credit policy at Adrienne's Pizza Bar is?

A.   Yes, if the question --

MR. KREGER:  Hold on, hold on, object to form.

Go ahead.

Q.   You can answer.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

A.   Yes, if the question -- if I could answer the question, yes, if not, I would refer them to the office.

Q.   Who at the office would you refer them to if you could not answer the question?

MR. KREGER:  Object to form.

A.   Again different people.  Usually like questions I couldn't answer, concerns stuff like that, they went upstairs.

Q.   And do you have the name of a person that you would direct them to?

A.   Again it was different people at different times.

Q.   Could you give me the names of the different people at different times?

MR. KREGER:  Object to form.

A.   There's been again a lot.  There was an Amanda, Anisha, a Doris, an Earlton.  Just different people at different times.

Q.   Hold on, so let's say in 2020, who would you refer people to?

A.   In 2020, actually by that point they could do everything on their phones through an app.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

Q.   They would have to ask questions through an app?

A.   They could get a lot of their questions answered through an app.

Q.   What if they wanted to speak to a live person?

A.   Then up to the third floor.

Q.   They would first go to you, right?

A.   Yes.

MR. KREGER:  Object to form.

Q.   Then you would direct them to the third floor?

A.   If I couldn't answer the question.

Q.   Who on the third floor would you direct them to?

MR. KREGER:  Object to form.

A.   Again it depends on who was there.

Q.   For 2020 who would you direct them to?

MR. KREGER:  Object to form.  You asked that five times.

A.   I don't recall.

Q.   You don't recall?

A.   No.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 34

                    Angelis

Q.   How about 2019?

     MR. KREGER:  Object to form.

A.   I don't recall.

Q.   How about 2018?

     MR. KREGER:  Object to form.

A.   Again, I don't recall.

Q.   You don't recall the names of any persons that you would direct employees to?

A.   I gave you the names, I just don't recall who was there when.

Q.   You said Amanda, Anisha, who else?

A.   Anisha, Amanda, Earlton, Doris.

Q.   Anybody else?

A.   That's all I can think of.

Q.   Do you know Amanda's last name?

A.   No.

Q.   Do you know what her title was?

A.   No.

Q.   Do you know what her training and HR is?

A.   No.

Q.   Do you know if she even graduated college?

A.   No.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 35

Angelis

Q.   Do you know what Anisha's last name is?

A.   No.

Q.   Do you know what her title was?

A.   I don't recall anyone's last name really, we were first name basis.  I don't remember if they went to college or their title.

Q.   You don't know the qualification for any of these people, is that correct?

A.   No.

Q.   Why did you think they were qualified to answer questions for employees?

MR. KREGER:  Object to form.

A.   Again our procedure was if somebody was hired, we sent them up to the third floor to get onboarded, and then again if there was a question I couldn't answer, we referred them to them.

Q.   Do you know what a spread of hours pay is?

A.   Yes.

Q.   What is it?

A.   Anyone who works more than ten hours in a day, it doesn't have to be ten consecutive,

Angelis

gets an extra hour of regular pay.

Q.   And if I came to you as an employee at Adrienne's Pizza Bar, that's what you would tell me, right?

A.   Yes.

Q.   And you wouldn't bother sending me upstairs because you already know the answer, is that right?

A.   Yeah, we pay spread of hours all the time.

Q.   I'm sorry, just to clarify, you wouldn't bother sending me upstairs because you already know the answer, is that right?

A.   To that one, yes.

Q.   What is your educational background, sir, what's your highest degree?

A.   I am a college graduate.

Q.   Where did you go to college, sir?

A.   I went to Hunter College.

Q.   What was your area of study?

A.   Journalism.

Q.   You don't have any other licenses or certifications, do you?

A.   No.

Page 37

Angelis

Q.   Do you have any special training in HR or payroll?

A.   Just again whatever stuff was offered by the payroll companies.

Q.   Would it be Paycom?

A.   Yes, Paycom was the last one.

Q.   But you don't have a law degree, right?

A.   No.

Q.   And you don't have a CPA license, correct?

A.   No.

Q.   And you don't have any special HR or payroll certifications, is that right?

A.   No.

Q.   Do employees at Adrienne's Pizza Bar --

MR. KREGER:  I'm sorry, you faded out there.  Can you repeat that, please.

Q.   Do employees at Adrienne's Pizza Bar clock out for their meals?

A.   No.

Q.   They stay clocked in?

A.   Yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 38

Angelis

Q. And are they paid for that meal time?

A. Yes.

Q. How long are the meals?

A. Usually half an hour to an hour.

Q. Do the employees have to do work while they're eating?

A. Work while they're eating, no.

Q. But they're clocked in, is that right?

A. Yes.

Q. So that's considered compensable work time, is that right?

MR. KREGER: Object to form.

A. I'm sorry?

Q. When they're clocked in, that's considered compensable work time, is that right?

A. I'm not sure what you mean. They're on a break, they sit down and they eat.

Q. But they're not clocked out, right?

A. No.

Q. So they're actually --

A. Yes.

Q. So they're considered working hours, correct, that they're getting paid for?

Page 39

Angelis

A.   Yes, yes.

Q.   So they could be working while they're eating, correct, because they're clocked in, right?

A.   I'm not sure what you mean.  Why would they be working while they're eating?

Q.   That's one of the allegations in the case.

A.   That's silly.  I mean we didn't have them clock out for meals and you're telling me that they had to work through the meals.

Q.   Did employees ever do any work while they were eating during their one-hour break?

A.   No, usually when people ate, everybody sat down and ate.  Usually in groups.

Q.   Is that half an hour or was it one hour?

MR. KREGER:  Object to form.

A.   At least half an hour.  If it was quiet enough, they could relax, you know, usually at least half an hour.  No one worked during their meal.  Why would they --

Q.   And if the meal break was only for half an hour, they would just continue working

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 40

Angelis

after they were done with their half hour meal break?

A.   Yes.

MR. KREGER:   Object to form.

Q.   Do you know when Noe Baez started working at Adrienne's Pizza Bar?

A.   No.

Q.   Do you know if he would have been working there in 2014?

A.   I'm not sure.

Q.   I'm sorry, he's one of the guys that you don't know who they are, right?  Actually he's one of the guys that you know?

A.   Yeah, he's one of the two I remember, yes.

Q.   And you said he was a longstanding employee, is that right?

A.   I believe so, yes.  From what I recall, yes, I just don't remember what year he started.

Q.   In your best estimate, would it be the past ten years?

A.   I can't, I'm not sure.  I know it was years, I just couldn't say whether it was four,

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 41

Angelis

five, six, I'm not sure, I'm sorry.

Q.   Would you be comfortable estimating that he had worked at Adrienne's Pizza Bar for at least six years?

MR. KREGER:  Object to form.

A.   Again, I don't recall.

Q.   Do you know when his last day of employment was?

A.   No.

Q.   Do you know what year he stopped working?

A.   No.

Q.   Was he working there when you left?

A.   I don't recall.

Q.   How about Alberto Baez, do you know when he started working at Adrienne's Pizza Bar?

A.   No.

Q.   Do you know how many years he was under the employment of Pizza On Stone?

A.   No.  I mean he was, if I had to say, I think he was longer than Noe, I think he was first, but I'm not a hundred percent sure.

Q.   Was he still working there when you left?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 42

Angelis

A.   I don't remember.

MR. KREGER:  C.K., can we take a quick five-minute break?

MR. LEE:  Sure, that's fine.

(Recess taken)

MR. LEE:  Vanessa, can you pull up Plaintiff's Exhibit 2, please.  I'm going to ask you to go down to Exhibit C.

I'm showing the witness Exhibit C to the first amended complaint, which is marked as Plaintiff's Exhibit 2.

Q.   Do you see this page, sir, Margot's Slices?

A.   Yes.

Q.   There's an article about Nick's Pizza, do you see that, sir?

A.   Yes.

Q.   The article talks about "Nick's Pizza brings an Adrienne-esque square pie to Forest Hills," do you see that, sir?

A.   Yes.

Q.   Did you open a pizza place called Nick's Pizza in Queens?

A.   Yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 43

Angelis

Q.   Is that place still open?

A.   Right now, no.

Q.   If you can flip to the next page and then the following page, there's an article here that says in the middle, it says "Last night was the first time I've had it and it was fine.  Not sure if it was quite as stunning as Adrienne's where Nick's Pizza owner Nick Angelis is a partner, but this was an initial tasting."

Is this article accurate that you were a partner at Adrienne's Pizza?

A.   No.

Q.   Did you ever --

MR. KREGER:  Where is this article from?  Where does this come from?

MR. LEE:  I'm not going to answer questions, Wayne.

MR. KREGER:  Well, object to form. Hold on, let me just object, and then you can go on.  Object to form and object to using some random piece of paper with words on it that's not been represented where it came from and no foundation has been laid.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 44

Angelis

MR. LEE:  It's in the complaint, thanks.

Q.    So did you ever hold yourself out as a partner at Adrienne's Pizza Bar?

A.    No, because I never was.

Q.    At no point in time did you ever hold any equity interest in Adrienne's Pizza Bar?

A.    Absolutely not.

Q.    Do you know where the reporter got their information that you were a partner at Adrienne's Pizza?

A.    No idea.

Q.    Do you remember being interviewed --

A.    No.

Q.    -- for this article?

A.    No.

Q.    You don't remember being interviewed by Adam Kuban?

MR. KREGER:  Object to form.

Q.    When he was reviewing Nick's Pizza?

MR. KREGER:  Object to form.

A.    No.  Again I've never been a partner at Adrienne's.  However you put it.

Q.    Do you remember being interviewed for

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 45

                        Angelis

this article?

          A.    No.

                MR. KREGER:  Object to form.  That's

          the third time you've asked it.

                MR. LEE:  I can't hear him, did he

          say no?

                MR. KREGER:  Yes, he said no.

                MR. LEE:  Vanessa, can you pull up

          Plaintiff's Exhibit 11, please.  Actually

          can you zoom in a little bit.

          Q.    Do you see the document, sir?  It's

what's previously marked as Plaintiff's Exhibit

11.  It's a payroll register summary for Noe

Baez, and I believe here his name is under the

third row.  Do you see his name on the third row,

Noe Baez?

          A.    Yes.

          Q.    Do you recognize this document, sir?

                MR. KREGER:  We can't see all of it.

                MR. LEE:  Vanessa, can you make it a

          little bit smaller so we can get the full

          document.  Thank you.

          A.    Yeah, it looks like a payroll

journal.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 46

Angelis

Q.    In here it has him working at least in 2014, do you see that, sir, the upper right-hand corner?

A.    Yes.

Q.    The end check date is December 18, 2014, correct?

A.    Yes.

Q.    So at the very least, he was employed as of this employment period?

A.    Yes.

Q.    Would you be able to estimate how much longer Mr. Baez had been employed by Adrienne's Pizza Bar after this pay period?

A.    I can't say as to when he left precisely.

Q.    Do you think he worked at least four or six years after this payroll period?

MR. KREGER:   Object to form.

A.    I don't know.

Q.    In the third column which has Mr. Baez's check as, check number as 1254, do you see that?

A.    Check number, yes, I see it.

Q.    And do you see his pay rate?  I'm

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 47

Angelis

sorry, let me ask you a question separately.  Are the payroll records accurately reflecting what employees got paid?

A.   Yes.

Q.   Do you believe that the payroll records maintained by Adrienne's Pizza Bar accurately reflect the pay rate and the hours worked by employees there?

A.   Yes.

Q.   And would you be able to tell me by looking at this document who the payroll provider was for this pay period?

A.   The payroll provider, no.

Q.   I believe on the bottom center it says Valiant Payroll Services, do you see that?

A.   Yes.

Q.   Was Valiant Payroll a payroll provider for Adrienne's Pizza at one point?

A.   I guess so.

Q.   Do you recall them being the payroll provider?

A.   No.

Q.   You still don't recall?

A.   No.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 48

Angelis

Q.   And you don't know when Valiant stopped?

A.   No.

Q.   So in the third row that we discussed, there's a heading that says Pay Rate, do you see that?

MR. KREGER:  It's at the top.

Q.   At the top is the column title which says Pay Rate, do you see that?

A.   Pay type, pay department, pay rate, yes.

Q.   So if you go all the way down to the third row, you'll see Mr. Baez's pay rate, it says 84.75.  Is that his pay rate, his overtime pay rate?

A.   No, I think that says pay amount.

Q.   Yeah, it says, well, pay amount is the next column over, and it has the same number, 84.75, do you see that?

A.   Yes.

Q.   So at least here it has him for this pay period paying one hour at 84.75 resulting in one hour pay at regular rate -- at overtime rate for 84.75.  Do you see that?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 49

                          Angelis

          A.   Yeah.

          Q.   Do you believe that's accurate, sir?

          A.   It doesn't seem like it.

          Q.   And then on the next row right under
overtime, do you see on the left it says regular,
do you see that?

          A.   Yes.

          Q.   And then if you skip two columns, it
says one hour, do you see that?

          A.   Yes.

          Q.   This pay period has him working one
hour at regular rate, and his pay rate for this
pay period is $4,700, do you see that, sir?

          A.   Yes, that seems like it's a mistake.

          MR. KREGER:  I think he owes us about
$4500.

          Q.   So you can agree that this entry is
not accurate for Mr. Baez?

          A.   Yeah.  It looks like the pay rate was
probably wrong.

          Q.   So if you look at the next column,
which would be for check number 1329, do you see
that, sir?

          A.   Yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 50

Angelis

Q.   It has his overtime rate at $15, do you see that?

A.   Yes.

Q.   Then right under it is regular hours are $10, do you see that?

A.   Yes.

Q.   Do you agree that that may be his accurate pay and time record for this pay period?

A.   Yes.

Q.   So would you agree that your payroll may not be accurate at least sometimes with respect to employees?

A.   It looks like this is because on the top one, he only has one hour on each one.  I can't even imagine what that was for.  It looks like it's some kind of a mistake.

MR. LEE:  So if you can pull that down, Vanessa.  Let's go to Plaintiff's Exhibit 9, which are wage records for Ivan -- I'm sorry, which are pay records for Ivan Rodriguez.  Is it possible to blow the whole thing up and make it wider. Good.  Can we make this a little bit wider since the screen is open now.  Thank you.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 51

Angelis

Q.   This is pay records for Ivan Velazquez, and have you seen this document before, sir?

A.   Not that I remember.

Q.   Do you know what these are?

A.   This looks like a payroll record for an individual employee, no?

Q.   These are, yes, payroll records for, I believe on the bottom left, I believe if you scroll down, it says Ivan Velazquez Rodriguez, do you see that on the left-hand side?

A.   Yes.

Q.   Do you recognize this form of document, sir?

A.   It looks like a record.  His record, his pay record.

Q.   His record of hours worked?

A.   Yes, that's what it looks like.

MR. LEE:  Vanessa, if I could trouble you to scroll up a little bit.

(Scrolling)

Q.   So on the top row it has the headings for the columns, do you see that, sir?

A.   Yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 52

Angelis

Q.    I want to direct your attention to first there's regular hours, do you see that in the first row, 37.43, do you see that?

A.    Yes.

Q.    Then you have the earnings for the hours?

A.    Right.

Q.    So if you divide 486.59 by 37.43 hours, you get an hourly pay of $13 an hour?

A.    Uh-huh.

Q.    Does that sound right to you, sir?

MR. KREGER:  Sorry, could you repeat that question, please.

MR. LEE:  Do you want to read back to the witness, ma'am.

(Record read)

MR. KREGER:  Object to form.

Q.    You can answer, sir.

MR. KREGER:  I mean do you want him to do the math?  I don't understand the question.

MR. LEE:  Yes, he could do the math.

A.    I have to do the math now.

MR. KREGER:  Do you have a

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 53

Angelis

calculator, Nick?

THE WITNESS:  Hold on, I'll get my phone.

A.   Yeah, 13.

Q.   And so I guess he didn't have any overtime hours for that pay period so it's blank under the column header for overtime, do you see that, sir?

A.   Yes.

Q.   Now, the other column, it says Other Coded, do you see that right next to --

A.   Other what, Other Coded, yes.

Q.   What is that?  It has hours, it has 15 hours there, do you know what that is?

A.   No idea.

Q.   It has earnings of 195, do you know what that is?

A.   No.

Q.   Do you know what the sub-column CD under Other Coded means?

A.   No.

Q.   Who would know?

MR. KREGER:  Object to form.

A.   That I couldn't tell you.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 54

Angelis

MR. LEE:  Let's move to page 3 of the same exhibit, Vanessa.

Q.   Do you see this document in front of you, sir, it's the check register report for Mr. Velazquez?

A.   Yes.

Q.   Now I want to direct your attention to the first row that has the headings Earnings, Rate, Hours/Units, Amount, do you see that, sir?

A.   Yes, sure.

Q.   And would you agree this information is what an employee would see on their actual wage statement, is that accurate?

A.   The employee would see, I don't know if they got this.

Q.   I believe when we were --

A.   This is annual.

Q.   You're saying this is an annual report?

A.   It looks like it, yeah, it looks like it says 1/1/2019 to 12/31/2019.

Q.   So it's a summary for the company's records and not for the employee, is that accurate?

Page 55

Angelis

A.   I don't know.  I guess they would get this as a W-2.

Q.   So here his gross amount pay for the year would be $7,633, do you see that?

A.   Yes.

Q.   So what is the 1099 meal, can you tell me what that is?

A.   No.

Q.   You don't know what that is?

A.   I'm not sure.  I believe that's the value of the meal for the year.

Q.   You're crediting meals taken by employees as compensation, is that right?

A.   Yeah, that's I think by law, I believe.

Q.   So you're including --

A.   You give people employee meals, there's a value and they have to get a credit for it.  I'm not charging them for the meal, they're getting a credit for the meal as a compensation, I guess.

Q.   So I think what you're saying is they're not claiming a meal credit but they're claiming the cost of the meals as a deduction, so

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 56

Angelis

that employees are assessed the value of the meal as taxable compensation, is that accurate?

A.   Yes.

MR. KREGER:   Object to form.

Go ahead.

Q.   And does the company keep track of the expenses incurred for the meals that are provided to employees?

A.   How do you mean?

Q.   Well, I guess just what I've said, maybe it's inartful, but does the --

MR. KREGER:   So stipulated.

Q.   Does the company maintain expense records for the cost of the meals given to employees?

A.   Not that I recall, no.

MR. LEE:   Can I turn to the next page, Vanessa.

Wayne, I have a quick question for you.  Do you know why I have Jose -- so this is -- okay, I get it now.

Q.   So for Jose Brito check register report, which is the fifth page on the same exhibit, there's a similar assessment for him as

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 57

Angelis

with where he's charged 720 --

A.   No, he's not charged, he's credited.

Q.   Yes, he has a taxable credit for 720

for that pay period, is that accurate?

MR. KREGER:  Object to form.

A.   Yes.

Q.   You can answer, sir.

A.   Yes.

Q.   That's the same for all employees, is

that accurate?

A.   Yes.

MR. LEE:  Can you go to the next

page, Vanessa.

I'm showing the witness what's in the

same Exhibit 9, page 6, which is a time

detail report.

Q.   Do you see that the date range on the

top right-hand corner is for the calendar year

2020?

A.   Yes.

Q.   And this is a summary for Jose Brito,

do you see that, sir?

A.   Yes.

Q.   Have you seen these detail time

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 58

Angelis

reports compiled for employees previously?

A. No.

Q. You've never seen this document, sir?

A. No.

Q. Do you look at payroll documents ever?

A. No, not unless there's a problem.

Q. When there's a problem, you look at them, right?

A. Yes, but there rarely is.

Q. Your understanding is the time detail report again should accurately reflect work performed by employees, is that accurate?

A. Yes.

Q. And the amount of pay that they receive also accurately reflects the amount of pay that they actually received, correct?

A. Yes.

Q. Do you see at the bottom is the --

MR. LEE: If you can scroll down, Vanessa.

Q. At the bottom of this page is the logo for Paycom, do you see that, sir?

A. Yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 59

Angelis

Q.    Would you agree that I guess as of 2020, Paycom would have been the payroll provider?

A.    Yes.

Q.    Do you know what this time detail report is intended to show?

A.    No.

MR. LEE:  If we could scroll up, Vanessa.  If you could blow it up a little bit because I'm going to go into the cells.  Perfect, thank you.

Q.    So if you look at the first column, which is titled Date, do you see that, sir?

A.    Yes.

Q.    If you go down a few rows to the first entry that has some words in it, Thursday.

A.    1/9, yes.

Q.    January 9, do you see that?

MR. KREGER:  Nick, let him finish his question.

Q.    Do you see under In, it has 4:13 p.m.?

A.    Uh-huh.

Q.    Can I respectfully request that you

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 60

Angelis

respond verbally?

A. Yes.

Q. Thank you, sir. And do you see that under the entry Out is 8:01 p.m., do you see that, sir?

A. Yes.

Q. So would you agree that this would be the punch-in and out time for Jose Brito for January 9, 2020?

A. Yes.

Q. Under Allocations, it describes him as a non-supervisor kitchen Spanish employee, do you see that, sir?

A. Uh-huh.

Q. Can you respond verbally, sir?

A. Yes.

Q. Would you agree that the company tracks which employees are Spanish and which employees are not Spanish?

A. Yes.

Q. Do you see the total hours 3.8, do you see that, sir?

A. Yes.

Q. So would you agree that the 3.8 is

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 61

Angelis

intended to reflect the time between 4:13 p.m. and 8:01 p.m.?

A.   Yes.

Q.   Do you see the row right under that where there is a one hour allocation for the same day, do you see that, sir?

MR. KREGER:  I'm sorry, where is that?

Q.   The row right under it, it says Thursday, January 9th, then under pay code it says fixed, do you see that, sir, it says fixed (ML 4), do you see that, sir?

A.   Yes.

Q.   Then it has NA for the in/out, do you see that?

A.   Yes.

Q.   So would you agree that there's no time entry for this punch-in and out, sir?

A.   Yes.

Q.   Again it has the same allocation which is a narrative description of the witness and who he is, a Spanish employee working in the kitchen in a non-supervisory role, do you see that?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 62

Angelis

A.   Yes.

Q.   And then when you get to the total hours for this punch-in/punch-out entry, do you see that it says one hour, do you see that?

A.   Yes.

Q.   Then for the total hours of the day, it assesses 4.8 hours for this employee, do you see that?

A.   Yes.

Q.   So would you agree with me that this one hour is intended to be the one-hour meal break?

A.   No.

Q.   What do you think this one hour is?

A.   Don't know.

Q.   Who would know?

A.   Paycom, I guess, they would be the people who would know what these are.  I don't know, it seems like there's one every day.

Q.   There is one every day because people take a one-hour meal break every day, correct?

A.   Yes, could be, I'm not sure.

Q.   If I could direct your attention to the next page, sir.  So is there any reason Mr.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 63

Angelis

Brito would be treated any differently than any other employees at Pizza On Stone?

A.   Again I don't recall him, I don't think so.

Q.   There's no reason why any employee would suffer different wage policies from other employees at the company, right?

MR. KREGER:  Object to form.

Q.   You can answer, sir.

A.   I mean no, there's no reason.

Q.   The wage policies implemented at Pizza On Stone would be the same for all of its employees at the restaurant, correct?

A.   Yes.

Q.   Do you see here starting the week of February 3rd, 2020, there's no working hours for Mr. Brito?

A.   Yes.

Q.   Is it because of COVID shutdown?

A.   I don't know, I don't remember.

Q.   Do you know if that was the last day of his working period?

A.   I don't remember.

MR. LEE:  Vanessa, if I can trouble

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 64

Angelis

you to scroll down all the way to the

Bates stamp number 178 on the lower right.

(Scrolling)

MR. LEE:  I'm showing the witness the

same exhibit, I'm showing him the page

that's Bates stamped 178 on Exhibit 9.

Q.   Do you see this document, sir, it's a
new hire employee checklist?

A.   Yes.

Q.   This is used for onboarding for all
employees at Adrienne's Pizza Bar, is that
accurate, sir?

A.   Again, I didn't handle this stuff, I
don't know.  It looks like it.

Q.   Does this look like the onboarding
checklist for the claimant Ivan Velazquez?

A.   I don't know as I usually didn't see
this.

Q.   When a form is -- when a required
form is completed per this checklist, are the
boxes usually checked?

MR. KREGER:  Object to form.

A.   I don't know.

Q.   If I could just trouble you to pause

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 65

Angelis

a bit after I ask the question and give Mr. Kreger a quick moment to object, and if he does, just let him finish his objection and then you can respond, okay, sir?

A.    Okay.

MR. KREGER:  Thank you.

MR. LEE:  Ms. Brunjes, can I direct the exhibit to Bates stamp 181 on this same exhibit.  Thank you.

I'm showing the witness the sample pay notice for the hospitality industry that's Bates stamped 181 on this same Exhibit 9.

Q.    Do you see this document, sir?

A.    Yes.

Q.    Do you need it to be blown up for you?

A.    No, I can see it.

Q.    Do you see that in the middle of the first section, the employee's name, this is for Ivan Rodriguez, do you see that, sir?

A.    Yes.

Q.    Do you also see that although the company's record maintained that he was a Spanish

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 66

Angelis

employee, that the hospital notice provided to him was solely in English, do you see that, sir?

A.   I'm not sure what you mean.

Q.   The sample notice that's in front of you provided to Mr. Ivan Velazquez Rodriguez is in the English language, do you see that, sir?

A.   Yes.

Q.   Are you aware of the requirement that for Spanish speakers working hospitality, they're required to receive a Spanish language wage notice?

A.   I can't see why he didn't get one.

Q.   Thank you, sir.

A.   Sure.

MR. LEE:  Can I trouble you to pull down the exhibit, ma'am, thank you.

Q.   Do you know who Idavil Almachi (phonetic) is?

A.   No.

MR. LEE:  Vanessa, can I trouble you to pull up Plaintiff's Exhibit 12, which are the employment records for Ramon Mendoza, please.

Q.   Can you see this, sir?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 67

Angelis

A.   Yes.

MR. LEE:  Vanessa, I'm just going to ask you to scroll the documents for Mr. Angelis.

Q.   Whenever you're ready, sir, you can ask Ms. Brunjes to go to the next page, and so I just want you to be fully informed and aware of what's in this exhibit.  It's actually not very long.

MR. KREGER:  Wait, I just want to make sure you want him to look at each page.

MR. LEE:  Yes, that's right.

MR. KREGER:  So go back to the first one and tell him that.

A.   Okay.

Q.   Whenever you're ready, can you go on to the next page?

A.   Just scroll.

(Scrolling)

A.   Next page.

(Scrolling)

A.   Next page.

(Scrolling)

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 68

Angelis

A.   Next page.

(Scrolling)

A.   Next page.

(Scrolling)

A.   Now we're on something else.

Q.   I believe this is the page that's Bates stamped 175 that's probably on the screen, I believe this is a similar form that we had reviewed for Ivan Rodriguez previously.

A.   Yes.

Q.   Do you see that, sir?

A.   Yes.

Q.   Let's keep scrolling.

(Scrolling)

Q.   So the next page would be the check register report, Bates stamped 176, again similar to the form that we had seen for Ivan Velazquez Rodriguez?

A.   Uh-huh.

Q.   Is that a yes, sir?

A.   Yes.

Q.   I think that's it.  This is the Bates stamp 177 is the employee pay history, similar to what we saw for Ivan earlier.  Do you see that,

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 69

Angelis

sir?

A.   Yes.

Q.   Do you agree that the records maintained for Ramon Mendoza is similar to what we've reviewed for Ivan Velazquez?

MR. KREGER:  Object to form.

A.   Yes.

Q.   And do you agree that these records that are maintained for Ivan Velazquez and Mr. Mendoza are kept in the normal course of business?

A.   Yes.

Q.   Is there any reason for you to doubt that they have not been tampered with and are maintained in the original format?

A.   Yes.

Q.   That's the same for all the records that defendants have produced to plaintiffs for this lawsuit, is that correct?

A.   Yes.

Q.   Thank you.

MR. LEE:  Vanessa, let's pull it down, thank you.

Vanessa, can I trouble you to pull up

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 70

Angelis

Plaintiff's Exhibit 10, which are the wage records provided by defendants for Mr. Jose Brito.

I'm just going to jump ahead and go to Bates stamp page 183. So I'm showing the witness what's Bates stamped 183 from Plaintiff's Exhibit 10.

Q. Do you see the heading here, it says Brito, Jose, do you see that, sir?

A. Yes.

Q. Do you know what this page is? Is this some kind of record maintained to compile I guess background information for the employees?

A. I don't know.

Q. Have you ever seen this before, sir?

A. No.

MR. LEE: Ms. Brunjes, if I can trouble you to blow up the page a little bit and we're going to be staying on the top of this page.

Q. Do you see under the name Brito, Jose, on the last line starting with labor allocation, do you see that?

A. Yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Angelis

Q.   It says he's culinary, so that means he's a cook, is that right?

A.   Yes.

Q.   He works in the kitchen, correct, sir?

A.   Yes.

Q.   Also it says he's Spanish, correct?

A.   Yes.

Q.   So again this is another example of the company keeping track of who are Spanish employees and who are not Spanish, is that correct?

A.   I don't know if it's the company keeping track or they picked Spanish on the app for Paycom, I'm not sure.

Q.   But you agree that the company has access to this information, correct?

A.   Yes.

Q.   Do you believe that the summaries on these employee profiles are accurate?

MR. KREGER:  Object to form.

Q.   You can answer, sir.

A.   Yes.

Q.   And you agree that these records are

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 72

Angelis

maintained in the normal course of business for the company?

A.   Yes.

Q.   And you also agree that these employee profiles are not distorted or revised in any way?

A.   Yes.

MR. LEE:  Ms. Brunjes, can I trouble you to go to Bates stamp Baez 201, please. Thank you.

I'm showing the witness what's Bates stamped 201, which is an earnings statement for Jose Brito.

Q.   Do you see this document, sir?

A.   Yes.

Q.   It has a pay date of March 31, 2020, do you see that, sir?

A.   Period ending?

Q.   Yes.

A.   Yeah, 3/31/2020.

Q.   Do you see that there is no hours worked so there was no pay for this time period, do you see that, sir?

A.   Yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 73

Angelis

Q.   That would make sense because I think this is right when COVID started and everybody was shut down, is that accurate?

A.   I don't remember.

(Screen froze)

(Pause)

(Recess taken)

MR. LEE:   I'm showing the witness the same exhibit, Bates stamp 202.

Q.   This is the wage statement for Jose Brito for the payday February 7th, 2020.  Do you see this document, sir?

A.   Yes.

Q.   You'll see here that he worked for 7.7 hours at a pay rate of $16 an hour for earnings of $123.20 based on his hourly work.  Do you see that, sir?

A.   Yes.

Q.   You'll see that he also has earnings with two units of meals at $3.60 each for additional taxable earnings at $7.20, do you see that, sir?

A.   Yes.

Q.   So his total taxable gross income for

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 74

Angelis

this pay period is $130.40, do you see that, sir?

A.   Yes.

Q.   Do you agree that this earning statement form is used for all other employees at Adrienne's Pizza?

MR. KREGER:  Object to form.

Q.   You can answer.

A.   Yes.

Q.   And do you agree that other employees similarly had their meals added as additional earnings that are taxable income?

A.   Yes.  I believe those are the rules, that's not something we just did.

Q.   Understood.

A.   It's a rule.

Q.   Do you believe that the earnings statements that are maintained by the company for its employees are kept in the ordinary course of business?

A.   Yes.

Q.   And do you believe that the records maintained on the wage statements for employees have not been altered and are true to its original form?

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 75

Angelis

A.   Yes.

Q.   Thank you, sir.  I think we're done with this exhibit.

MR. LEE:  Vanessa, can I trouble you to pull up Plaintiff's Exhibit 8.

Q.   Do you know if all the employees are paid on the same pay date or if they're paid on different pay dates?

MR. KREGER:  Object to form.

A.   I believe it was all the same day.

Q.   Did the pay date ever change during the time period that you were working at Adrienne's Pizza?

A.   Do you mean the day of the week that the checks were given?

Q.   Sure, yes.  So for example, here for Mr. Baez, the pay date is designated as Friday. Did it ever change from Friday?

A.   I don't remember.

Q.   Is there any reason that it would ever change from Friday?

MR. KREGER:  Object to form.

A.   I don't remember.

Q.   It says it may change due to a

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 76

Angelis

holiday, but other than holiday reasons, is there any reason why it would change?

MR. KREGER: Object to form.

A. Again I don't remember if it was changed.

Q. If it was changed, employees would receive a notice for it, is that correct?

MR. KREGER: Object to form.

A. I don't remember.

Q. You don't remember if employees would receive a pay notice that their day of pay changed?

A. I don't remember if it was ever changed, so I don't remember if they got a notice.

Q. If it changed would they have gotten a notice?

MR. KREGER: Object to form.

A. I don't know.

Q. Do you know if the value of the meals ever changed?

MR. KREGER: Object to form.

A. No, I don't.

Q. Would employees get a notice that the

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 77

Angelis

value of their meals changed?

MR. KREGER:  Object to form.

A.   I don't know.

MR. LEE:  Vanessa, can I trouble you
to go to Bates stamp Baez 058 on the same
exhibit.

I'm showing the witness Bates stamp
038 on the same exhibit.

Q.   If I can direct you to the third
column.  Do you see the third column is for, it
says CK date, March 13, 2020, do you see that?

A.   Yes.

Q.   Do you see the meals that's assessed
as earnings as $3.60, do you see that, sir?

A.   Yes.

Q.   For this pay period he was assessed I
guess five meals, do you see that, sir?

A.   Yes.

Q.   Do you see above that the meal rate
changed to 5.15, do you see that?

A.   Yes.

Q.   Do you know what the reason for that
is, sir?

A.   No idea.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 78

Angelis

Q.   If I can direct your attention to Bates stamp Baez 051 in this same exhibit.

MR. LEE:  I'm showing the witness what's marked as Exhibit -- the same exhibit Bates stamp 051, which is a time card report for Juan Baez.

Q.   Do you see this document, sir?

A.   Yes.

Q.   Do you know if Juan Baez is the same person as Alberto Baez?

A.   That I don't know.

Q.   There's a narrative in the middle of the top of the page right under the headers, it says "Overtime calculation considers 6.51 hours from earlier this week."  Do you see that, sir?

A.   Yes.

Q.   What does that mean, do you know?

A.   No.

Q.   These are weekly pay summaries, is that accurate?

A.   Yes.

Q.   For the first week that ends January 4, it says below that week, "Total hours clocked for week of 12/29 to 1/4 :48.51 plus 2.00

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 79

Angelis

not considered for OT," do you see that, sir?

A.   Yes.

Q.   What does that statement mean, do you know?

A.   I believe the 2 is the spread of hours.

Q.   So let's go to the next page.  Do you see in the middle of the page, it says "Total hours clocked for week of 1/26 to 2/1 :38.71," do you see that, sir?

A.   Yes.

Q.   Then it says "8 not considered for OT," do you see that?

A.   Yes.

Q.   Do you know what that means, sir?

A.   I'm not sure, but I guess the meals and the spread.

Q.   Are these records maintained for all the other employees at Pizza On Stone?

A.   I'm not sure.  Probably.

Q.   Do you believe these records are maintained in the normal course of business at Pizza On Stone?

A.   Yes.

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 80

Angelis

Q.   Is there any reason for you to believe that they've been altered in any way?

A.   No.

MR. LEE:  Wayne, let me take ten minutes and then let me get back to you.

(Recess taken)

MR. LEE:  We're done.  I'm ordering next day, thanks.

(Time noted:  12:24 p.m.)

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

ACKNOWLEDGMENT


I, NICK ANGELIS, hereby certify that I have read the transcript of my testimony taken under oath in my deposition on July 25, 2024; that the transcript is a true, complete and correct record of my testimony; and that the answers on the record as given by me are true and correct.

_____

NICK ANGELIS


Signed and subscribed to before me this_____day of_____, 2024.
_____
          Notary Public

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

Page 82

ERRATA SHEET

Name of Case: Alberto Baez v Pizza On Stone

Date:  July 25, 2024

Witness:  Nick Angelis

PAGE      LINE(s)        FROM              TO

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____     _____
     Nick Angelis                Date

Page 83

C E R T I F I C A T I O N

I, LISA HIESIGER, a Shorthand Reporter and Notary Public, within and for the State of New York, do hereby certify:

That I reported the proceedings in the within entitled matter, and that the within transcript is a true record of such proceedings.

I further certify that I am not related, by blood or marriage, to any of the parties in this matter and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 25th day of July, 2024.

_____

LISA HIESIGER

8cdc8123-4d2c-4872-bf2c-ba4ac91f330d

**A**

A-n-g-e-l-i-s 5:7
a.m 1:14 21:9
able 11:23 21:11,20
  46:12 47:11
Absolutely 44:9
access 16:20,23
  29:8,12,17 71:18
accurate 20:19,24
  43:11 49:3,19
  50:9,12 54:14,25
  56:3 57:5,11
  58:14 64:13 71:21
  73:4 78:21
accurately 47:3,8
  58:13,17
acknowledge 4:4,8
ACKNOWLED...
  81:2
actual 54:13
Adam 44:19
added 74:11
additional 73:22
  74:11
address 5:12 6:7
adjust 16:18
administer 4:10
administered 4:9
Adrienne's 1:7
  15:2,4 16:5 26:12
  26:18 27:3,10
  31:13,20 36:4
  37:17,21 40:7
  41:4,17 43:8,12
  44:5,8,12,24
  46:14 47:7,19
  64:12 74:6 75:14
Adrienne-esque
  42:20
against- 1:6
ago 8:11 11:16
agree 4:17,18 26:11
  26:17,21 27:13
  49:18 50:8,11
  54:12 59:2 60:8
  60:18,25 61:18

62:11 69:4,9
  71:17,25 72:5
  74:4,10
AGREED 3:1,6,9
agreement 4:14,15
ahead 7:25,25 24:4
  31:24 56:6 70:5
Alberto 1:3 18:12
  20:3 27:13,19
  41:16 78:11 82:2
allegations 39:8
alleged 16:2
alleges 20:17,23
allocation 61:6,21
  70:24
Allocations 60:12
Almachi 66:18
altered 74:24 80:3
Amanda 32:19
  34:12,13
Amanda's 34:16
amended 42:11
amount 29:5 48:17
  48:18 54:10 55:4
  58:16,17
Angelis 1:8,17 4:1
  5:1,3,6 6:1 7:1
  8:1 9:1 10:1 11:1
  12:1 13:1,16 14:1
  14:10 15:1 16:1
  17:1 18:1 19:1
  20:1 21:1 22:1
  23:1 24:1 25:1
  26:1 27:1 28:1
  29:1 30:1 31:1
  32:1 33:1 34:1
  35:1 36:1 37:1
  38:1 39:1 40:1
  41:1 42:1 43:1,9
  44:1 45:1 46:1
  47:1 48:1 49:1
  50:1 51:1 52:1
  53:1 54:1 55:1
  56:1 57:1 58:1
  59:1 60:1 61:1
  62:1 63:1 64:1
  65:1 66:1 67:1,5

68:1 69:1 70:1
  71:1 72:1 73:1
  74:1 75:1 76:1
  77:1 78:1 79:1
  80:1 81:4,12 82:4
  82:25
Anisha 11:11 12:9
  12:18 32:19 34:12
  34:13
Anisha's 35:2
annual 54:18,19
answer 6:12 9:4
  23:16 27:23 31:8
  31:25 32:3,6,9
  33:14 35:13,18
  36:8,14 43:17
  52:19 57:8 63:10
  71:23 74:8
answered 33:5
answering 31:12
answers 81:9
anybody 12:22,23
  34:14
anymore 12:16
  13:3
anyone's 35:6
apartment 5:21
app 32:25 33:3,5
  71:15
appear 20:19
applied 14:21
approval 23:14
  24:15,21
approve 30:16,18
area 36:21
arrangement 4:12
arrive 21:4
arrived 19:6 21:9
  21:25
article 42:16,19
  43:5,11,15 44:16
  45:2
asked 16:18 33:22
  45:5
asking 27:8,9
assessed 56:2 77:14
  77:17

assesses 62:8
assessment 56:25
assistant 29:21
ate 39:15,16
attention 52:2 54:8
  62:24 78:2
attorneys 2:3,11
  4:2
Avenue 2:12 5:12
  5:13
aware 15:7 27:2,9
  28:17 66:9 67:8

**B**

B-a-e-z 18:12,18
B-r-o-w-e-r 5:13
back 18:10 26:15
  28:23 52:15 67:15
  80:6
background 36:16
  70:14
backtrack 29:21
Baez 1:3 18:12,17
  20:3,17 27:13,19
  40:6 41:16 45:15
  45:17 46:13 49:19
  72:10 75:18 77:6
  78:3,7,10,11 82:2
Baez's 46:22 48:14
Bar 1:7 15:2,4 16:5
  26:12,18 27:3,11
  31:13,20 36:4
  37:18,21 40:7
  41:4,17 44:5,8
  46:14 47:7 64:12
based 73:17
basis 35:7
Bates 64:3,7 65:9
  65:13 68:8,17,23
  70:6,7 72:10,12
  73:10 77:6,8 78:3
  78:6
behalf 1:3
believe 7:12 10:2
  10:15 11:10,20
  13:16 14:20,21
  15:5 19:5 23:25

25:3,8,18 26:2
  28:21 29:17 30:10
  30:14 40:19 45:15
  47:6,15 49:3
  51:10,10 54:17
  55:11,16 68:7,9
  71:20 74:13,17,22
  75:11 79:6,22
  80:3
best 40:22
bit 45:11,22 50:24
  51:21 59:11 65:2
  70:20
blank 53:7
blood 83:10
blow 50:23 59:10
  70:19
blown 65:17
bother 36:7,13
bottom 47:15 51:10
  58:20,23
boxes 64:22
break 38:19 39:14
  39:24 40:3 42:4
  62:13,22
brings 42:20
Brito 56:23 57:22
  60:9 63:2,18 70:4
  70:10,22 72:14
  73:12
Brower 5:12
Brunjes 2:19 65:8
  67:7 70:18 72:9
bunch 12:7
business 69:12 72:2
  74:20 79:23
busy 23:20,21

**C**

C 2:1 4:19 42:9,10
  83:1,1
C.K 2:6 4:17 6:7
  42:3
calculation 78:15
calculator 53:2
calendar 57:19
call 15:25

**called** 4:20 6:23
  42:23
**card** 78:7
**Casano** 1:8 9:23,25
  10:11 13:20
**case** 1:6 39:9 82:2
**cash** 28:2,10
**catch** 26:16
**CD** 53:20
**cells** 59:12
**center** 47:15
**Centre** 5:13,17
  18:5
**certain** 23:22
**certification** 3:3
**certifications** 36:24
  37:15
**certify** 81:4 83:5,9
**change** 75:12,19,22
  75:25 76:3
**changed** 8:25 76:6
  76:7,13,15,17,22
  77:2,21
**charge** 12:13,19,22
  12:23 29:25 30:2
**charged** 57:2,3
**charging** 55:20
**check** 46:6,22,22
  46:24 49:23 54:5
  56:23 68:16
**checked** 64:22
**checklist** 64:9,17
  64:21
**checks** 75:16
**chef** 30:7,7,8,9
**circumstances**
  17:21
**City** 15:5
**CK** 77:12
**claimant** 64:17
**claimants** 23:5
**claiming** 23:7
  55:24,25
**claims** 15:18 16:2
  18:11 23:4
**clarify** 13:16 16:4
  36:12

**Class** 1:4
**clear** 12:21 13:2
  14:24
**Clerk** 2:19
**client** 6:10
**clock** 19:6,10 21:5
  21:12,14,17 22:7
  22:12,18,21 23:8
  37:22 39:11
**clocked** 22:2,16,25
  37:24 38:9,16,20
  39:4 78:25 79:10
**clocking** 23:9
**closed** 7:12
**code** 61:11
**Coded** 53:12,13,21
**Collective** 1:3
**college** 34:24 35:8
  36:18,19,20
**column** 46:21 48:9
  48:19 49:22 53:8
  53:11 59:13 77:11
  77:11
**columns** 49:9 51:24
**come** 31:5,6,18
  43:16
**comfortable** 41:3
**committed** 29:6
**communicating**
  27:17
**companies** 37:5
**company** 11:11,14
  11:18,19 24:4
  56:7,14 60:18
  63:8 71:11,14,17
  72:3 74:18
**company's** 22:20
  22:24 23:12 24:14
  24:20 28:2 54:23
  65:25
**compensable** 38:12
  38:17
**compensation**
  55:14,21 56:3
**compile** 70:13
**compiled** 58:2
**complaint** 42:11

  44:2
**complete** 81:7
**completed** 64:21
**compliance** 11:2,5
  11:13 12:5,14,19
  12:24
**concerns** 32:9
**consecutive** 35:25
**consent** 4:11
**considered** 38:12
  38:17,24 79:2,13
**considers** 78:15
**contained** 14:17
**contemplated**
  23:23 24:9
**continue** 39:25
**continuing** 23:9
**cook** 71:3
**copy** 4:23
**corner** 46:4 57:19
**corporate** 13:17
  14:25
**correct** 10:19 11:25
  12:19,24 13:19
  15:2 23:24 24:5
  26:13 27:5 28:18
  29:9 35:10 37:12
  38:25 39:4 46:7
  58:18 62:22 63:14
  69:20 71:5,8,13
  71:18 76:8 81:8
  81:10
**correctly** 23:17
**cost** 55:25 56:15
**counsel** 3:2 4:11
**course** 24:13 69:11
  72:2 74:19 79:23
**Court** 1:1 3:12 4:2
  4:22
**COVID** 7:11,16
  63:20 73:3
**CPA** 37:11
**credit** 31:18,19
  55:19,21,24 57:4
**credited** 57:3
**crediting** 55:13
**culinary** 71:2

**currently** 5:11 6:19
  6:20,25

**― D ―**
**d/b/a** 1:7
**date** 25:10,13 46:6
  57:18 59:14 72:17
  75:8,12,18 77:12
  82:3,25
**dated** 14:14 25:20
**dates** 25:15 75:9
**day** 20:18 35:25
  41:8 61:7 62:7,20
  62:21,22 63:22
  75:11,15 76:12
  80:9 81:15 83:14
**day-to-day** 17:25
**days** 20:18
**December** 46:6
**deduction** 55:25
**defendants** 1:9
  2:11 69:19 70:3
**degree** 36:17 37:8
**department** 48:11
**depending** 9:15,21
  23:20
**depends** 33:18
**deposition** 1:17 3:4
  3:10 4:3,5,6 15:11
  81:6
**describes** 60:12
**description** 61:22
**designated** 75:18
**detail** 57:17,25
  58:12 59:6
**determined** 28:25
**different** 11:6,6
  12:10 14:3,6
  16:16 29:23,23
  32:8,13,14,16,16
  32:20,20 63:7
  75:9
**differently** 63:2
**dinners** 20:9
**direct** 32:12 33:12
  33:16,19 34:9
  52:2 54:8 62:24

  65:8 77:10 78:2
**directed** 13:8
**directly** 15:12
  18:15
**discovery** 6:9
**discuss** 16:2 25:23
**discussed** 48:6
**distorted** 72:6
**DISTRICT** 1:1,1
**divide** 52:9
**document** 14:11
  45:12,19,23 47:12
  51:3,15 54:4 58:4
  64:8 65:15 72:15
  73:13 78:8
**documents** 16:21
  58:6 67:4
**Doris** 11:11 12:9,11
  32:19 34:13
**doubt** 69:14
**due** 75:25
**duly** 4:19
**duties** 8:20

**― E ―**
**E** 2:1,1 4:19 83:1
**e-mail** 6:3,5,7
  15:13
**earlier** 25:10,10,12
  25:13,14,20 68:25
  78:16
**Earlton** 12:9 32:19
  34:13
**early** 21:4,9,25
**earning** 74:4
**earnings** 52:6
  53:17 54:9 72:13
  73:17,20,22 74:12
  74:17 77:15
**eat** 38:19
**eating** 38:7,8 39:4,7
  39:14
**educational** 36:16
**effect** 3:11
**eight** 7:12
**either** 9:18 11:11
  12:19 20:12 26:15

27:17,18
**employed** 46:9,13
**employee** 13:4
14:13,17 16:21
21:3 22:6,10
24:25 29:9,12,18
31:4 36:3 40:18
51:8 54:13,15,24
55:18 60:13 61:23
62:8 63:6 64:9
66:2 68:24 71:21
72:6
**employee's** 21:8
65:21
**employees** 14:18,22
16:8,21 19:5,24
20:2,7 22:21,25
23:9,13 24:15,21
26:12,18 27:3,10
28:8,14 34:9
35:13 37:17,21
38:6 39:13 47:4,9
50:13 55:14 56:2
56:9,16 57:10
58:2,14 60:19,20
63:3,8,14 64:12
70:14 71:12 74:5
74:10,19,23 75:7
76:7,11,25 79:20
**employees'** 31:12
**employment** 12:6
14:18 41:9,20
46:10 66:23
**ends** 78:23
**English** 26:22 27:4
27:15 66:3,7
**entitled** 83:7
**entity** 6:23 14:25
**entry** 49:18 59:17
60:5 61:19 62:4
**equity** 6:22 44:8
**ERRATA** 82:1
**ESQ** 2:6,10,14
**estimate** 40:22
46:12
**estimating** 41:3
**evenings** 20:14

**event** 6:8
**everybody** 39:16
73:3
**exactly** 7:20 23:6
31:15
**EXAMINATION**
5:2
**example** 71:10
75:17
**exhibit** 14:8 42:8,9
42:10,12 45:10,13
50:20 54:3 56:25
57:16 64:6,7 65:9
65:10,14 66:17,22
67:9 70:2,8 73:10
75:4,6 77:7,9 78:3
78:5,6
**expense** 56:14
**expenses** 56:8
**extra** 24:11,22 36:2

───────── **F** ─────────

**F** 83:1
**faded** 37:19
**February** 7:14
63:17 73:12
**February/March**
7:17
**fifth** 56:24
**filing** 3:3
**finally** 28:23
**fine** 42:5 43:7
**finish** 27:22 59:20
65:4
**fire** 16:8 28:14,16
**first** 4:19 15:7
22:12 33:9 35:7
41:23 42:11 43:7
52:3,4 54:9 59:13
59:17 65:21 67:15
78:23
**five** 20:17 21:21
33:22 41:2 77:18
**five-minute** 42:4
**fixed** 61:12,12
**flip** 43:4
**floor** 2:4 8:4 9:7,22

13:9,21,24 14:2
16:16 29:22 33:8
33:13,15 35:16
**Florida** 18:9
**FLSA** 1:3
**fluent** 26:22 27:14
**following** 43:5
**follows** 4:21
**force** 3:11
**Forest** 42:20
**form** 3:7 7:24 8:21
8:23 9:14 11:15
12:2,15,25 13:7
17:11 20:20,25
21:6,13 22:4,13
22:17 23:15 24:18
24:23 28:7 29:14
31:7,14,23 32:7
32:17 33:11,17,21
34:3,6 35:14
38:14 39:19 40:5
41:6 43:19,21
44:20,22 45:4
46:19 51:14 52:18
53:24 56:5 57:6
63:9 64:20,21,23
68:9,18 69:7
71:22 74:5,7,25
75:10,23 76:4,9
76:19,23 77:3
**format** 69:16
**forth** 18:10
**foundation** 43:24
**four** 40:25 46:17
**Francis** 13:20
**Francisco** 30:10,13
30:19,22,25
**Frank** 1:7 9:23,25
17:16 28:22 29:8
29:20 30:16,18,21
30:24
**Friday** 75:18,19,22
**Fridays** 20:19
**front** 54:4 66:5
**froze** 73:6
**full** 5:4 9:8 30:22
30:23 45:22

**full-time** 31:2
**fully** 67:8
**further** 3:6,9 4:8
83:9

───────── **G** ─────────

**G** 4:19
**general** 8:4
**getting** 38:25 55:21
**girls** 12:12
**give** 12:4 27:23
32:15 55:18 65:2
**given** 56:15 75:16
81:9
**go** 6:11 7:25,25
13:6,9 18:8,10
31:24 33:9 36:19
42:9 43:21 48:13
50:19 56:6 57:13
59:11,16 67:7,15
67:18 70:5 72:10
77:6 79:8
**going** 6:11,16 9:21
28:23 42:8 43:17
59:11 67:3 70:5
70:20
**Good** 5:3 50:24
**gotten** 76:17
**graduate** 36:18
**graduated** 34:23
**gross** 55:4 73:25
**Group** 2:2,19
**groups** 39:16
**guess** 6:13 7:23
17:3,24 18:16
19:11 29:3,15
47:20 53:6 55:2
55:22 56:11 59:2
62:18 70:14 77:18
79:17
**guessing** 19:13,18
**gun** 27:22
**guys** 16:15 40:12
40:14

───────── **H** ─────────

**half** 38:5 39:17,20

39:22,25 40:2
**hand** 83:14
**handbook** 14:9,13
14:17 25:2,6,25
**handbooks** 25:20
**handle** 64:14
**happened** 7:16
23:11
**header** 53:8
**headers** 78:14
**heading** 48:6 70:9
**headings** 51:23
54:9
**hear** 45:6
**held** 1:18
**helping** 30:6
**hereto** 3:2
**hereunto** 83:13
**Hiesiger** 1:18 4:20
83:3,17
**highest** 36:17
**Hills** 42:21
**hire** 16:8 28:14,16
30:13,16 64:9
**hired** 28:20 30:15
30:23 35:16
**history** 68:24
**hold** 31:22,22
32:21 43:20 44:4
44:7 53:3
**holiday** 76:2,2
**hospital** 66:2
**hospitality** 65:12
66:10
**hour** 36:2 38:5,5
39:17,18,20,22,25
40:2 48:23,24
49:10,13 50:15
52:10 61:6 62:5
62:12,15 73:16
**hourly** 52:10 73:17
**hours** 9:13,17
20:11,18,24 23:24
24:3,5,11,17,22
29:5 35:20,24
36:10 38:24 47:8
50:5 51:18 52:3,7

52:10 53:7,14,15 60:22 62:4,7,8 63:17 72:22 73:16 78:15,24 79:7,10
**Hours/Units** 54:10
**house** 5:19
**HR** 10:25 11:13 12:13,19,24 34:20 37:3,14
**hundred** 41:23
**Hunter** 36:20

**I**

**Idavil** 66:18
**idea** 44:13 53:16 77:25
**imagine** 50:16
**implemented** 63:12
**in/out** 61:15
**inartful** 56:12
**including** 55:17
**income** 73:25 74:12
**incomplete** 8:25
**incurred** 56:8
**indicate** 4:14
**individual** 24:8 51:8
**individuals** 26:22 28:4
**industry** 65:12
**information** 44:11 54:12 70:14 71:18
**informed** 67:8
**initial** 43:10
**initially** 7:18
**instruct** 6:12
**intended** 59:7 61:2 62:12
**interest** 6:22 44:8
**interested** 83:12
**interviewed** 44:14 44:18,25
**involved** 8:15
**Ivan** 18:21,23 50:21,22 51:2,11 64:17 65:22 66:6 68:10,18,25 69:6

69:10

**J**

**January** 59:19 60:10 61:11 78:24
**Jason** 8:17,17,18
**job** 1:25 7:22 8:20
**Jose** 18:25 56:21,23 57:22 60:9 70:4 70:10,23 72:14 73:11
**journal** 45:25
**Journalism** 36:22
**Juan** 78:7,10
**July** 1:13 81:6 82:3 83:14
**jump** 27:21 70:5

**K**

**K** 4:19
**keep** 56:7 68:14
**keeping** 71:11,15
**kept** 69:11 74:19
**kind** 9:6 14:5 50:17 70:13
**kitchen** 9:7,22 16:16 20:7 30:2,2 30:6 60:13 61:24 71:5
**klee@leelitigatio...** 2:7
**know** 9:23 10:10,16 10:17,22 11:9,17 12:8,22 14:4 17:9 17:13,17,20 18:11 18:12,14,23 19:9 19:11 20:3 21:20 23:4 25:4,11,15 25:21,22,24 26:5 27:25 29:10 30:8 30:11 34:16,18,20 34:23 35:2,5,9,20 36:8,14 39:21 40:6,9,13,14,24 41:8,11,16,19 44:10 46:20 48:2 51:6 53:15,17,20

53:23 54:15 55:2 55:10 56:21 59:6 62:16,17,19,20 63:21,22 64:15,18 64:24 66:18 70:12 70:15 71:14 75:7 76:20,21 77:4,23 78:10,12,18 79:5 79:16
**Kreger** 2:10,14 4:18,18,22,25 6:6 6:10,15,18 7:24 8:21,23 9:14 11:3 11:15 12:2,15,25 13:7,19 17:11 19:13,15,17 20:20 20:25 21:6,13 22:4,13,17 23:15 24:18,23 25:21 26:5,14 27:21 28:7 29:14 31:7 31:14,22 32:7,17 33:11,17,21 34:3 34:6 35:14 37:19 38:14 39:19 40:5 41:6 42:3 43:15 43:19 44:20,22 45:4,8,20 46:19 48:8 49:16 52:13 52:18,20,25 53:24 56:5,13 57:6 59:20 61:8 63:9 64:23 65:3,7 67:11,15 69:7 71:22 74:7 75:10 75:23 76:4,9,19 76:23 77:3
**Kuban** 44:19

**L**

**L** 4:19
**labor** 70:23
**laid** 43:25
**language** 66:7,11
**law** 2:10,19 37:8 55:15
**lawsuit** 15:9,15,18

15:21 69:20
**leaving** 17:22
**Lee** 2:2,6,19 4:17 4:17 5:2 6:8,13,16 8:22 10:20 11:5 13:15 14:7 25:19 26:3 42:5,7 43:17 44:2 45:6,9,21 50:18 51:20 52:15 52:23 54:2 56:18 57:13 58:21 59:9 63:25 64:5 65:8 66:16,21 67:3,14 69:23 70:18 72:9 73:9 75:5 77:5 78:4 80:5,8
**left** 11:8,24 17:19 41:14,25 46:15 49:6 51:10
**left-hand** 51:12
**legal** 5:4,8
**let's** 11:8 20:2 21:3 22:11 24:2,10 31:16 32:21 50:19 54:2 68:14 69:23 79:8
**license** 37:11
**licenses** 36:23
**lieu** 4:9
**limit** 21:21
**line** 70:23
**LINE(s)** 82:5
**Lisa** 1:18 4:20 83:3 83:17
**Litigation** 2:2,19
**little** 45:11,22 50:24 51:21 59:10 70:19
**live** 18:4,5 33:7
**LLC** 1:7 6:23 10:14 14:24
**located** 15:4 18:2
**logo** 58:24
**long** 17:23 18:20 28:24 29:7 30:9 38:4 67:10
**longer** 41:22 46:13

**longstanding** 40:17
**look** 49:22 58:6,9 59:13 64:16 67:12
**looking** 47:12
**looks** 14:12 45:24 49:20 50:14,16 51:7,16,19 54:21 54:21 64:15
**lot** 9:21 11:17 14:3 14:6,6 32:18 33:4
**lower** 64:3
**lunch** 20:10
**lunches** 20:8

**M**

**ma'am** 52:16 66:17
**machine** 19:7,10
**Madison** 2:12
**maintain** 56:14
**maintained** 47:7 65:25 69:5,10,16 70:13 72:2 74:18 74:23 79:19,23
**managed** 8:12
**management** 8:15
**manager** 8:2,3,4,4 8:8
**managers** 29:21,22
**manner** 4:13
**March** 72:17 77:12
**Margot's** 42:13
**mark** 6:16
**marked** 42:12 45:13 78:5
**marriage** 83:10
**math** 52:21,23,24
**matter** 83:7,11,12
**meal** 38:2 39:23,24 40:2 55:7,12,20 55:21,24 56:2 62:12,22 77:20
**meals** 37:22 38:4 39:11,12 55:13,18 55:25 56:8,15 73:21 74:11 76:21 77:2,14,18 79:17
**mean** 16:14,23 28:9

31:15 38:18 39:6 39:10 41:21 52:20 56:10 63:11 66:4 75:15 78:18 79:4
**means** 53:21 71:2 79:16
**Mendoza** 19:3 66:24 69:5,11
**mid-2020** 7:8,9
**middle** 43:6 65:20 78:13 79:9
**minutes** 21:10,22 22:2,12,22 23:2 80:6
**mistake** 49:15 50:17
**ML** 61:13
**mobile** 5:24
**moment** 65:3
**morning** 5:3
**move** 54:2

**N**

**N** 2:1 4:19,19 83:1
**N-i-c-k** 5:6
**N-o-e** 18:17
**name** 4:15 5:4,8 11:24 12:4 30:8 30:11 32:11 34:16 35:2,6,7 45:15,16 65:21 70:22 82:2
**names** 10:16 12:8 14:4 32:15 34:8 34:10
**narrative** 61:22 78:13
**native** 26:12,18 27:4,5,14
**necessarily** 9:20
**need** 6:6,8 15:11 23:13 65:17
**needed** 9:16 24:15
**never** 23:11 28:16 44:6,23 58:4
**new** 1:1,20 2:5,5,13 2:13 5:13 15:5 18:6 64:9 83:5

**Nicholas** 5:9
**Nick** 1:8,17 5:6,8 5:10 7:25 9:3 27:21 43:9 53:2 59:20 81:4,12 82:4,25
**Nick's** 42:16,19,24 43:9 44:21
**night** 43:6
**Noe** 18:17 27:19,25 40:6 41:22 45:14 45:17
**non-supervisor** 60:13
**non-supervisory** 61:24
**noon** 9:18
**normal** 69:11 72:2 79:23
**Notary** 1:19 3:10 4:20 81:17 83:4
**note** 6:14
**noted** 80:10
**notice** 65:12 66:2,5 66:12 76:8,12,16 76:18,25
**number** 5:21,24 46:22,24 48:19 49:23 64:3

**O**

**O** 83:1
**o'clock** 20:13
**oath** 4:9,10 81:6
**object** 8:21,23 9:14 11:15 12:2,15,25 13:7 17:11 20:20 20:25 21:6,13 22:4,13,17 23:15 24:18,23 28:7 29:14 31:7,14,22 32:7,17 33:11,17 33:21 34:3,6 35:14 38:14 39:19 40:5 41:6 43:19 43:20,21,21 44:20 44:22 45:4 46:19

52:18 53:24 56:5 57:6 63:9 64:23 65:3 69:7 71:22 74:7 75:10,23 76:4,9,19,23 77:3
**objection** 7:24 65:4
**objections** 3:7 4:13
**obtain** 23:13
**offered** 37:4
**office** 12:12 13:12 13:21,24 14:2 32:4,5
**officer** 11:14 12:5
**offices** 2:10 13:10 16:24
**Oh** 8:2
**okay** 6:18 8:16 21:16 23:19 27:24 56:22 65:5,6 67:17
**onboarded** 25:16 35:17
**onboarding** 64:11 64:16
**one-hour** 39:14 62:12,22
**ones** 25:14
**oOo** 2:20
**open** 7:11 42:23 43:2 50:25
**opened** 7:6
**operating** 14:25
**operation** 9:6
**order** 24:21
**ordering** 80:8
**ordinary** 74:19
**original** 69:16 74:25
**OT** 79:2,14
**outcome** 83:12
**oversaw** 9:6
**overtime** 23:13,18 24:5,7,22 48:15 48:24 49:6 50:2 53:7,8 78:15
**owes** 49:16
**owner** 17:13 43:9

**owners** 10:2,13 17:15 29:11,12
**ownership** 10:10 10:22 17:9

**P**

**P** 2:1,1
**P-a-y-c-o-m** 11:21
**P-o-u-l-a-k-a-k-o-s** 10:21
**p.m** 21:9 59:23 60:5 61:2,3 80:10
**pack** 18:8
**page** 42:13 43:4,5 54:2 56:19,24 57:14,16 58:23 62:25 64:6 67:7 67:13,19,22,24 68:2,4,7,16 70:6 70:12,19,21 78:14 79:8,9 82:5
**paid** 24:12 28:2,10 38:2,25 47:4 75:8 75:8
**paper** 43:22
**participating** 4:3
**parties** 3:2 4:11 83:11
**partner** 43:10,12 44:5,11,23
**pause** 64:25 73:7
**pay** 13:5,5 16:10 19:12 29:2 30:19 35:21 36:2,10 46:14,25 47:8,13 48:6,10,11,11,11 48:14,15,16,17,18 48:23,24 49:12,13 49:14,20 50:9,9 50:21 51:2,17 52:10 53:7 55:4 57:5 58:16,18 61:11 65:12 68:24 72:17,23 73:16 74:2 75:8,9,12,18 76:12,12 77:17 78:20

**Paycom** 11:20 19:21 37:6,7 58:24 59:3 62:18 71:16
**payday** 73:12
**paying** 48:23
**payroll** 11:11,14,18 11:19,24 12:5 28:2,3,5,9,12 37:3 37:5,15 45:14,24 46:18 47:3,6,12 47:14,16,18,18,21 50:11 51:7,9 58:6 59:3
**people** 8:11,14 11:6 12:10 14:3,4,6 16:16 23:18 24:5 24:7 29:23 32:8 32:13,16,20,22 35:10 39:15 55:18 62:19,21
**people's** 23:22
**percent** 41:23
**percentage** 17:9
**Perfect** 59:12
**performed** 58:14
**period** 8:24 46:10 46:14,18 47:13 48:23 49:12,14 50:9 53:7 57:5 63:23 72:19,23 74:2 75:13 77:17
**person** 4:9 10:25 11:24 24:2 29:25 30:5 31:11 32:11 33:7 78:11
**person's** 16:18
**personally** 18:14
**persons** 34:9
**Peter** 1:7 10:17,18 10:23 13:23 15:14 15:17,22 17:4,10 17:16 28:14,22 29:8,20 30:15,18 30:21,24
**phone** 53:4
**phones** 32:24

phonetic 66:19
physically 4:4
picked 71:15
pie 42:20
piece 43:22
pizza 1:7,7 6:23
  9:10,21 10:13,23
  10:25 12:5 13:5
  14:19,22,24 15:2
  15:4,8 16:5,21
  17:10,15,22 19:24
  26:12,18 27:3,10
  28:6,15 29:6,9,22
  31:13,20 36:4
  37:17,21 40:7
  41:4,17,20 42:17
  42:19,23,24 43:9
  43:12 44:5,8,12
  44:21 46:14 47:7
  47:19 63:3,13
  64:12 74:6 75:14
  79:20,24 82:2
place 8:7 9:5 42:23
  43:2
Plaintiff 1:5,18 2:3
Plaintiff's 14:8
  42:8,12 45:10,13
  50:19 66:22 70:2
  70:8 75:6
plaintiffs 1:3 69:19
please 4:14 5:25
  25:20 37:20 42:8
  45:10 52:14 66:24
  72:10
PLLC 2:2
plus 78:25
point 32:23 44:7
  47:19
policies 13:5 14:18
  14:21 31:13 63:7
  63:12
policy 19:24 22:20
  22:24 23:12 24:14
  24:20 31:19
position 13:3 24:4
possible 19:20
  50:22

Poulakakos 1:7
  10:18 13:23
precisely 46:16
premises 19:6
present 2:18 4:5
previously 45:13
  58:2 68:10
prior 23:14 24:15
  24:21 25:6,17
probably 49:21
  68:8 79:21
problem 58:8,9
procedure 35:15
proceedings 83:6,8
produced 13:17
  69:19
profiles 71:21 72:6
provide 5:4,24
  25:19 26:3
provided 25:22
  56:9 66:2,6 70:3
provider 47:12,14
  47:19,22 59:4
Public 1:19 3:11
  4:20 81:17 83:4
pull 14:7 42:7 45:9
  50:18 66:16,22
  69:23,25 75:6
punch 19:6,9
punch-in 60:9
  61:19
punch-in/punch-...
  19:23 62:4
purchasing 4:23
put 44:24

        Q
qualification 35:9
qualified 35:12
Queens 42:24
question 3:7 19:25
  27:22,23 31:4,21
  32:2,3,6 33:14
  35:18 47:2 52:14
  52:22 56:20 59:21
  65:2
questions 13:4

  31:12,17 32:9
  33:2,5 35:13
  43:18
quick 42:4 56:20
  65:3
quiet 39:21
quite 11:12 12:16
  43:8

        R
R 2:1 83:1
Ramon 19:3 66:23
  69:5
ran 8:7 9:5
random 43:22
range 57:18
rarely 58:11
rate 29:2 30:18
  46:25 47:8 48:6
  48:10,11,14,15,16
  48:24,24 49:13,13
  49:20 50:2 54:10
  73:16 77:20
reach 15:20
read 24:25 26:15
  52:15,17 81:5
ready 67:6,18
really 26:10 35:7
reason 29:16 62:25
  63:6,11 69:14
  75:21 76:3 77:23
  80:2
reasons 76:2
recall 7:15 12:20
  13:14 22:5 23:8
  23:17 25:15 26:8
  30:12 31:9 33:23
  33:24 34:4,7,8,11
  35:6 40:20 41:7
  41:15 47:21,24
  56:17 63:4
receive 58:17 66:11
  76:8,12
received 58:18
Recess 42:6 73:8
  80:7
recognize 14:10

  45:19 51:14
recollection 16:3
record 4:16 50:9
  51:7,16,16,17,18
  52:17 65:25 70:13
  81:8,9 83:8
records 29:9,13,18
  31:5 47:3,7 50:20
  50:21 51:2,9
  54:24 56:15 66:23
  69:4,9,18 70:3
  71:25 74:22 79:19
  79:22
refer 32:3,5,22
referred 35:18
reflect 47:8 58:13
  61:2
reflecting 47:3
reflects 58:17
register 45:14 54:5
  56:23 68:17
regular 36:2 48:24
  49:6,13 50:5 52:3
related 83:10
relax 39:21
remember 7:7,20
  8:18,19 14:5
  18:16,19,24 19:15
  19:19,22 20:12,21
  21:2 24:6 27:16
  35:8 40:15,20
  42:2 44:14,18,25
  51:5 63:21,24
  73:5 75:20,24
  76:5,10,11,14,15
remote 11:17
remotely 4:7,10
repeat 26:15 37:20
  52:13
replacement 17:18
report 54:5,20
  56:24 57:17 58:13
  59:7 68:17 78:7
reported 83:6
reporter 1:19 4:2
  4:22 10:20 44:10
  83:4

reporting 4:6,13
reports 58:2
representative
  13:17
represented 43:23
reprimand 22:3
request 59:25
required 23:8
  64:20 66:11
requirement 66:9
reserved 3:8
reside 5:11
respect 50:13
respectfully 59:25
respective 3:2
respond 60:2,16
  65:5
responsible 31:11
restaurant 7:11
  10:3,6,8 17:5
  63:14
resulting 48:23
retired 6:21
reviewed 68:10
  69:6
reviewing 44:21
revised 72:6
Reyes 18:17 27:19
  27:25
right 5:22 6:13
  13:18 16:6,18
  17:2,13 18:6,9
  21:18 29:11,13
  30:25 33:9 36:5,9
  36:14 37:9,15
  38:10,13,17,20
  39:5 40:13,18
  43:3 49:5 50:5
  52:8,12 53:12
  55:14 58:10 61:5
  61:10 63:8 64:3
  67:14 71:3 73:3
  78:14
right-hand 46:4
  57:19
Rock 5:15
Rockville 5:13,16

5:17 18:5
**Rodriguez** 50:22
  51:11 65:22 66:6
  68:10,19
**role** 61:24
**room** 4:5
**row** 45:16,16 48:5
  48:14 49:5 51:23
  52:4 54:9 61:5,10
**rows** 59:16
**rule** 74:16
**rules** 74:13
**ruling** 6:14,17
**running** 16:5

---

### S

**S** 2:1 4:19
**sample** 65:11 66:5
**sat** 39:16
**saw** 28:16 68:25
**saying** 11:13 12:13
  16:4 21:16 23:22
  54:19 55:23
**says** 25:9 43:6,6
  47:16 48:6,10,15
  48:17,18 49:6,10
  51:11 53:11 54:22
  61:10,12,12 62:5
  70:9 71:2,8 75:25
  77:12 78:15,24
  79:9,13
**schedule** 16:13,18
  20:3,6,22 21:8
  24:4
**scheduled** 21:3,11
  21:17 22:2,7,11
  22:22 23:2,18
  24:2,16
**schedules** 23:23
**screen** 50:25 68:8
  73:6
**scroll** 51:11,21
  58:21 59:9 64:2
  67:4,20
**scrolling** 51:22
  64:4 67:21,23,25
  68:3,5,14,15

**sealing** 3:3
**section** 65:21
**see** 14:14,15 16:25
  17:2 42:13,17,21
  45:12,16,20 46:3
  46:22,24,25 47:16
  48:7,10,14,20,25
  49:6,7,10,14,23
  50:3,6 51:12,24
  52:3,4 53:8,12
  54:4,10,13,15
  55:5 57:18,23
  58:20,24 59:14,19
  59:22 60:4,5,14
  60:22,23 61:5,7
  61:12,13,16,24
  62:5,5,9 63:16
  64:8,18 65:15,19
  65:20,22,24 66:3
  66:7,13,25 68:12
  68:25 70:9,10,22
  70:24 72:15,18,22
  72:24 73:13,15,18
  73:20,22 74:2
  77:11,12,14,15,18
  77:20,21 78:8,16
  79:2,9,11,14
**seen** 25:12,14 26:6
  51:3 57:25 58:4
  68:18 70:16
**sending** 36:7,13
**sense** 73:2
**sent** 35:16
**separately** 47:2
**server** 31:16
**Services** 47:16
**set** 16:10,12 83:14
**seven** 20:18
**SHEET** 82:1
**shift** 20:11 21:25
  22:11 24:11
**Shorthand** 1:19
  83:3
**show** 59:7
**showing** 42:10
  57:15 64:5,6
  65:11 70:6 72:12

73:9 77:8 78:4
**shut** 73:4
**shutdown** 7:17,18
  63:20
**side** 51:12
**signed** 3:10,11
  81:14
**silly** 39:10
**similar** 56:25 68:9
  68:17,24 69:5
**similarly** 22:10
  74:11
**sir** 5:5,11,19 6:3,20
  7:5,22 8:16,20 9:8
  14:11,15 18:3
  25:2,20,25 26:7,9
  31:8 36:17,19
  42:13,17,21 45:12
  45:19 46:3 49:3
  49:14,24 51:4,15
  51:24 52:12,19
  53:9 54:5,10 57:8
  57:23 58:4,24
  59:14 60:4,6,14
  60:16,23 61:7,12
  61:13,19 62:25
  63:10 64:8,13
  65:5,15,22 66:3,7
  66:14,25 67:6
  68:12,21 69:2
  70:10,16 71:6,23
  72:15,18,24 73:13
  73:18,23 74:2
  75:3 77:15,18,24
  78:8,16 79:2,11
  79:16
**sit** 38:19
**six** 7:12 22:21,25
  41:2,5 46:18
**skip** 49:9
**Slices** 42:14
**smaller** 45:22
**smoothly** 9:6
**solely** 66:3
**somebody** 11:14
  20:10 21:25 31:6
  35:15

**sorry** 5:15 6:15
  8:10,13,19,22
  11:3 18:2 19:14
  21:7 26:14 28:8
  29:20 36:12 37:19
  38:15 40:12 41:2
  47:2 50:21 52:13
  61:8
**sound** 52:12
**sous** 30:7
**SOUTHERN** 1:1
**Spanish** 25:24 26:6
  26:9,13,19 27:5
  27:10,14 60:13,19
  60:20 61:23 65:25
  66:10,11 71:8,11
  71:12,15
**speak** 13:11 15:14
  15:17 26:9 31:5,6
  31:10 33:6
**speaker** 27:14
**speakers** 26:13,19
  26:23 27:4,5
  66:10
**speaking** 27:10
**special** 37:2,14
**specific** 8:5,6
**specifically** 12:20
**spelling** 5:4
**spoke** 15:12
**spread** 35:20 36:10
  79:6,18
**square** 42:20
**stake** 10:10,22
**stamp** 64:3 65:9
  68:24 70:6 72:10
  73:10 77:6,8 78:3
  78:6
**stamped** 64:7 65:13
  68:8,17 70:7
  72:13
**start** 21:4,10,15
**started** 40:6,21
  41:17 73:3
**starting** 7:14 63:16
  70:23
**State** 1:20 83:5

**statement** 54:14
  72:14 73:11 74:5
  79:4
**statements** 74:18
  74:23
**STATES** 1:1
**stating** 4:15
**station** 9:22
**stay** 22:25 37:24
**staying** 70:20
**stipulated** 3:1,6,9
  56:13
**Stone** 1:7 6:23 9:11
  10:14,23 11:2
  12:5 13:6 14:19
  14:22,24 15:5,8
  16:22 17:10,16,22
  19:24 28:6,15
  29:6,9,22 41:20
  63:3,13 79:20,24
  82:2
**stopped** 41:11 48:3
**Street** 2:4 15:5
**study** 36:21
**stuff** 11:17 32:9
  37:4 64:14
**stunning** 43:8
**sub-column** 53:20
**subject** 15:8
**subscribed** 81:14
**suffer** 63:7
**Suite** 2:12
**summaries** 71:20
  78:20
**summary** 45:14
  54:23 57:22
**Sunday** 20:24
**supervise** 30:6
**supervisors** 23:14
**suppose** 8:2
**sure** 5:6 9:5 11:12
  11:16 12:7,8,16
  12:23 21:19,22,23
  22:15 27:7 28:19
  29:7,15 38:18
  39:6 40:11,24
  41:2,23 42:5 43:8

54:11 55:11 62:23
66:4,15 67:12
71:16 75:17 79:17
79:21
**sworn** 3:12 4:20

—————— T ——————
**T** 83:1,1
**take** 42:3 62:22
80:5
**taken** 1:17 42:6
55:13 73:8 80:7
81:5
**talking** 7:19 8:24
**talks** 42:19
**tampered** 69:15
**tasting** 43:10
**taxable** 56:3 57:4
73:22,25 74:12
**tell** 11:23 19:17
22:6 31:19 36:5
47:11 53:25 55:8
67:16
**telling** 39:11
**ten** 35:24,25 40:23
80:5
**terms** 9:7
**testified** 4:21
**testimony** 81:5,8
**text** 15:25
**thank** 45:23 50:25
59:12 60:4 65:7
65:10 66:14,17
69:22,24 72:11
75:3
**thanks** 44:3 80:9
**thing** 9:15 13:13
50:23
**think** 13:25 19:20
28:22,23 34:15
35:12 41:22,22
46:17 48:17 49:16
55:15,23 62:15
63:5 68:23 73:2
75:3
**third** 13:9,20,24
14:2 33:8,13,15

35:16 45:5,16,16
46:21 48:5,14
77:10,11
**Thomas** 18:25
**three** 24:11
**Thursday** 59:17
61:11
**time** 3:8 7:6 9:2,8
11:8 12:10 13:8
17:23 18:20 21:7
21:11,17,20 22:3
22:8,11,22 23:2
24:5 28:24 29:5,7
30:9,22,23 36:11
38:2,13,17 43:7
44:7 45:5 50:9
57:16,25 58:12
59:6 60:9 61:2,19
72:23 75:13 78:6
80:10
**times** 11:7 20:11
29:23 32:14,16,20
33:22
**tip** 31:17,19
**title** 7:22 8:5,6
34:18 35:5,8 48:9
**titled** 59:14
**told** 14:4 15:10
**top** 48:8,9 50:15
51:23 57:19 70:21
78:14
**total** 60:22 62:3,7
73:25 78:24 79:9
**track** 56:7 71:11,15
**tracks** 60:19
**training** 34:20 37:2
**transcript** 4:24
81:5,7 83:8
**treated** 63:2
**trial** 3:8
**trouble** 27:16 51:20
63:25 64:25 66:16
66:21 69:25 70:19
72:9 75:5 77:5
**true** 74:24 81:7,9
83:8
**try** 27:21

**trying** 31:9
**Tuesday** 20:18
**turn** 56:18
**two** 28:22,25 29:4
40:15 49:9 73:21
**type** 48:11
**typical** 9:17 20:6

—————— U ——————
**Uh-huh** 52:11
59:24 60:15 68:20
**ultimately** 30:3,4
**understand** 9:3
19:25 52:21
**understanding**
58:12
**Understood** 74:15
**uniformly** 14:22
**UNITED** 1:1
**units** 73:21
**upper** 46:3
**upstairs** 32:10 36:8
36:13
**use** 6:3
**usually** 9:13 16:14
16:15 20:15 32:8
38:5 39:15,16,21
64:18,22

—————— V ——————
**v** 82:2
**Valiant** 47:16,18
48:2
**value** 55:12,19 56:2
76:21 77:2
**Vanessa** 2:19 14:7
42:7 45:9,21
50:19 51:20 54:3
56:19 57:14 58:22
59:10 63:25 66:21
67:3 69:23,25
75:5 77:5
**varied** 9:15,20
**Velazquez** 18:21
51:3,11 54:6
64:17 66:6 68:18
69:6,10

**vendor** 19:9
**verbally** 60:2,16
**version** 25:7,25
26:6
**visit** 10:8

—————— W ——————
**W-2** 55:3
**wage** 15:8 31:5,12
50:20 54:14 63:7
63:12 66:11 70:2
73:11 74:23
**wait** 21:21 67:11
**waive** 4:12
**waived** 3:5
**want** 13:15 52:2,15
52:20 54:8 67:8
67:11,12
**wanted** 16:17,25
28:18 31:16 33:6
**way** 48:13 64:2
72:7 80:3 83:11
**Wayne** 2:10,14
4:18 8:22 13:15
15:10,12,12 25:19
26:3 43:18 56:20
80:5
**we're** 28:23 68:6
70:20 75:3 80:8
**we've** 25:8 69:6
**week** 20:18 24:3
63:16 75:15 78:16
78:23,24,25 79:10
**weekly** 78:20
**weeks** 7:13
**went** 32:10 35:8
36:20
**weren't** 28:8
**West** 2:4
**WHEREOF** 83:13
**wider** 50:23,24
**witness** 4:21 19:14
19:16 27:24 42:10
52:16 53:3 57:15
61:22 64:5 65:11
70:7 72:12 73:9
77:8 78:4 82:4

83:13
**word** 11:3
**words** 43:23 59:17
**work** 6:5,20 7:3,5
9:8 10:3,6 13:20
13:23 16:12 17:7
20:3,6,8,9 21:8,11
21:17 22:2,8,22
23:2,8,10,13 24:5
24:8,10,16,16,22
29:6 30:21 38:6,8
38:12,17 39:12,13
58:13 73:17
**worked** 9:18 14:2
18:14 20:14,17,23
22:10 29:4 30:24
39:22 41:4 46:17
47:9 51:18 72:23
73:15
**working** 6:25 7:21
9:10 14:18 16:6
20:10 21:5,10,15
21:24 22:8,19
23:23 24:11 28:5
29:5 30:22 38:24
39:3,7,25 40:7,10
41:12,14,17,24
46:2 49:12 61:23
63:17,23 66:10
75:13
**works** 35:24 71:5
**workweek** 24:9
**wouldn't** 21:14
22:15 36:7,13
**wrong** 49:21
**wrote** 25:4

—————— X ——————
**x** 1:2,11

—————— Y ——————
**yeah** 14:12 24:6,6
25:3 29:15 30:3
36:10 40:15 45:24
48:18 49:2,20
53:5 54:21 55:15
72:21

**year** 40:20 41:11 55:5,12 57:19
**years** 14:6 26:25 27:3,8 40:23,25 41:5,19 46:18
**York** 1:1,20 2:5,5 2:13,13 5:13 15:5 18:6 83:5

**Z**

**zoom** 1:18 45:11

**0**

**038** 77:9
**051** 78:3,6
**058** 77:6

**1**

**1/1/2019** 54:22
**1/26** 79:10
**1/4** 78:25
**1/9** 59:18
**1:21-cv-09714** 1:6
**10** 20:13 21:4,9,9 50:6 70:2,8
**10011** 2:5
**10017** 2:13
**1099** 55:7
**11** 20:13,16,23 45:10,14
**11570** 5:14
**12** 66:22
**12/29** 78:25
**12/31/2019** 54:22
**12:24** 80:10
**123.20** 73:17
**1254** 46:22
**13** 52:10 53:5 77:12
**130.40** 74:2
**1329** 49:23
**148** 2:4
**15** 21:10 22:2 50:2 53:15
**16** 73:16
**16-year** 8:24
**175** 68:8
**176** 68:17

**177** 68:24
**178** 64:3,7
**18** 46:6
**181** 65:9,13
**183** 70:6,7
**195** 53:17

**2**

**2** 42:8,12 79:6
**2.00** 78:25
**2/1** 79:10
**20** 22:11
**2003** 7:7
**201** 72:10,13
**2014** 40:10 46:3,7
**2018** 34:5
**2019** 34:2
**202** 73:10
**2020** 7:14,17 14:15 25:9,17 32:21,23 33:19 57:20 59:3 60:10 63:17 72:17 73:12 77:12
**2024** 1:13 81:6,15 82:3 83:14
**24th** 2:4
**25** 1:13 81:6 82:3
**25th** 83:14
**289** 5:12

**3**

**3** 54:2
**3.60** 73:21 77:15
**3.8** 60:22,25
**3/31/2020** 72:21
**30(b)(6)** 13:19
**300** 2:12
**31** 72:17
**37.43** 52:4,9
**38.71** 79:10
**3rd** 63:17

**4**

**4** 7:7 20:13,15 21:4 21:9,9 61:13 78:24
**4,700** 49:14

**4.8** 62:8
**4:13** 59:22 61:2
**40** 23:23
**42** 24:3
**42-hour** 24:9
**424** 2:12
**4500** 49:17
**48.51** 78:25
**486.59** 52:9

**5**

**5** 7:8 20:13,15
**5.15** 77:21
**516)384-0892** 6:2
**54** 15:5

**6**

**6** 57:16
**6.51** 78:15
**64** 17:24

**7**

**7** 14:8
**7,633** 55:5
**7.20** 73:22
**7.7** 73:16
**720** 57:2,4
**7th** 73:12

**8**

**8** 75:6 79:13
**8:01** 60:5 61:3
**84.75** 48:15,20,23 48:25
**8th** 2:4

**9**

**9** 9:18 20:16 50:20 57:16 59:19 60:10 64:7 65:14
**9:45** 21:5,5,10
**9:51** 1:14
**9504** 1:25
**9th** 61:11